1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Marquis Aurbach Coffing**
Brian R. Hardy, Esq.
Nevada Bar No. 10068
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
bhardy@maclaw.com

Jonathan O'Brien, NYB No. 5043369
(Pending Admission Pro Hac Vice)
Law Office of Jonathan O'Brien
Telephone: (646) 308-1689
43 W. 43rd St, Suite 002
New York, NY 10036
Jobrien@burnsobrienlaw.com

*Attorneys for Plaintiffs William Clark and Gabrielle Clark*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GABRIELLE CLARK, individually and as parent and guardian of WILLIAM CLARK and WILLIAM CLARK, individually,

Plaintiffs

v.

STATE PUBLIC CHARTER SCHOOL AUTHORITY, DEMOCRACY PREP PUBLIC SCHOOLS, DEMOCRACY PREP PUBLIC SCHOOLS, INC., DEMOCRACY PREP at the AGASSI CAMPUS, DEMOCRACY PREP NEVADA LLC, SCHOOL BOARD of Democracy Prep at the Agassi Campus, NATASHA TRIVERS individually and in her official capacity as Superintendent and CEO, ADAM JOHNSON, individually and in his official capacity as Executive Director and Principal, KATHRYN BASS individually and in her capacity as Teacher, JOSEPH MORGAN, individually and in his official capacity as Board Chair, KIMBERLY WALL individually and in her capacity as assistant superintendent, and John & Jane Does 1-20

Defendants.

Case No.

**PLAINTIFFS' COMPLAINT FOR INJUNCTIVE RELEIF, DECLARATORY RELIEF, AND DAMAGES**

**(JURY TRIAL DEMANDED)**

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Plaintiffs Gabrielle Clark individually and as parent and guardian of William Clark and William Clark individually by and through their attorneys of record, the law firm of Marquis Aurbach Coffing, allege and complain as follows:

## NATURE OF ACTION

### A.   ASSERTING INTEGRITY OF CONSCIENCE AGAINST STATE DISCRIMINATION AND COERCION

1.    Plaintiff, William Clark, brings suit for injunctive relief and damages against Defendants for repeatedly compelling his speech involving intimate matters of race, gender, sexuality and religion. Defendants compelled Plaintiff William Clark to make professions about his racial, sexual, gender and religious identities in verbal class exercises and in graded, written homework assignments which were subject to the scrutiny, interrogation and derogatory labeling of students, teachers and school administrators. By directing Plaintiff William Clark to reveal his identities in a controlled, yet non-private setting, to scrutiny and official labeling, Defendants were and still are coercing him to accept and affirm politicized and discriminatory principles and statements that he cannot in conscience affirm. Defendants "invade the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." *West Virginia State Board of Education v. Barnette*, 319 U.S. 624. Defendants repeatedly threatened William Clark with material harm including a failing grade and non-graduation if he failed to comply with their requirements. When he declined to participate in these confessional exercises and assignments, Defendants rejected his requests for reasonable accommodation and acted on their threats. Defendants' coercive and intrusive behavior compelled William Clark's protected speech and invaded his privacy, violating his constitutional rights under the First Amendment and his due process rights under the Fourteenth Amendment.

2.    Plaintiff, Gabrielle Clark, a black woman, is William Clark's mother and only living parent guardian. William's father, now deceased, was a white man and an attorney. Plaintiff Gabrielle Clark brings suit on her own behalf and asserts her Fourteenth Amendment substantive due process right to family integrity and autonomy, which the Defendants

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

deliberately threatened and undermined in word and deed, directing her son in class to "unlearn" the basic Judeo-Christian principles she imparted to him, and then retaliated against her son with a failing grade and threats of non-graduation when he declined to participate. Parents possess a right and covenant to guide and direct the upbringing of their children, and courts have repeatedly honored and upheld this right. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) (O'Connor, J., plurality); *see also Meyer v. Nebraska*, 262 U.S. 390, 401-02 (1923) (upholding the "power of parents to control the education of their own.")

3.      Defendants, who include a state funded and sponsored charter school, teachers and senior administrators, have deliberately created a hostile educational environment for Plaintiff William Clark, who, unlike his classmates appears to be and is regarded by his peers as white. Defendants thus discriminated on the basis of race and color, in addition to sex, gender and religion, in violation of Title VI and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. As Gabrielle Clark told Defendants in a meeting seeking accommodation, "you put a bullseye on my son's back." The following illustration is copied directly from Defendant school's mandatory class material annexed hereto as **Exhibit A** and exemplifies the glib discriminatory tone of the compulsory instruction:



**B.      RELIEF REQUESTED**

4.      William Clark's graduation from high school has been threatened and his academic performance has already been unjustly harmed. He and his mother Gabrielle Clark, whose hopes are fully invested in her son's wellbeing and prospects, seek emergency injunctive relief for reasonable accommodation, as ongoing harm done and threatened to be done by Defendants is irreparable, and pray the Court declare Defendants' behavior in violation of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq.

5.      Plaintiffs also seek monetary damages, including compensatory and punitive damages, for the damage done to William Clark's future academic and professional prospects, and for the Defendants' deliberate and protracted harassment, emotional abuse, and violation of Plaintiffs' Constitutional Rights.

**JURISDICTION AND VENUE**

6.      This action arises under 42 U.S.C. § 2000d, et seq. and 42 U.S.C. §1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper in the District of Nevada under 28 U.S.C. §1391 because the events giving rise to the claims detailed herein occurred in the District of Nevada, and all Defendants do business there. Defendants Democracy Prep Public Schools and Democracy Prep Public Schools Inc. and associated individuals are interstate actors headquartered in Manhattan.

**THE PARTIES**

**A.      PLAINTIFFS**

8.      Plaintiff William Clark is in the 12th grade at Democracy Prep at the Agassi Campus (DPAC), formerly Andre Agassi College Preparatory Academy, where he first enrolled six years ago.  He has been there much longer than Defendants, who took over management and control of the Agassi Campus three years ago. William is hoping to attend college to study music. William resides in Clark County, Nevada with his Mother, Gabrielle

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Clark, in transitional housing with two siblings, both of whom are black. William's father is deceased.

9.      Gabrielle Clark is a single mother and guardian of three children, two of whom are school age, including William Clark. She has brought up her children according to traditional Judeo-Christian principles, including the proposition that every person is unique and equal before the eyes of God and will be judged by the content of their character rather than the color of their skin. Ms. Clark is temporarily disabled and unemployed, but is active in her children's education, having secured for them coveted admissions to public charter schools in the Las Vegas area, specifically Clark County.

**B.      DEFENDANTS**

10.      Defendant State Public Charter School Authority ["SPCSA"] characterizes itself as a "local education agency."[1] SPCSA certifies, authorizes, screens and monitors DPAC, and recently renewed its contract with Defendants DPAC, Democracy Prep Nevada LLC, and Democracy Prep at the Agassi Campus School Board in the contract annexed hereto. The contract requires DPAC to notify SPCSA of any violations in its contractual obligations, and SPSCA must in turn direct corrective action. SPCSA conducts site visits and evaluations, including of curriculum and grading changes at DPAC. SPCSA's acquiescence and deliberate indifference to DPAC's discriminatory and unconstitutional acts and curriculum programming amounts to practice and custom with regards to the constitutional violations discussed herein.

11.      Defendant Democracy Prep Public Schools (DPPS) describes itself as a public charter school network and is organized under the laws of the State of New York. DPPS is headquartered at 1767 Park Avenue, 4th & 5th Floor, in Manhattan. In its IRS Form 990 for fiscal year ending in 2018, DPPS describes itself as a "charter management organization providing educational services, management operations and fundraising activities" for charter

---

[1] *See* Contract, attached hereto as **Exhibit B**.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

schools including DPAC in Nevada.[2]   As a public educational institution and recipient of federal and state funds, DPPS has a duty to enforce the United States Constitution and state law by not enacting, imposing, operating, or maintaining policies, operations, or goals that discriminate against or grant preferential or detrimental treatment to any individual or group on the basis of race, sex, color, religion, ethnicity or national origin. Defendants' curriculum programming involving invasion of privacy, public disclosure of private, intimate facts, compelled speech and discrimination was generated by DPPS in New York and amounts to custom and practice.

12.     Defendant Democracy Prep at Agassi Campus (DPAC) is a K-12 member school of the DPPS network. DPAC is located in Clark County, Nevada. DPAC receives and benefits from federal and state financial assistance. DPAC claims that it relies entirely on public funds — in 2018 about $5,700 per pupil from the state and federal funds. DPAC has utilized and expended public monies to implement its unconstitutional "civics" programming in violation of the United States Constitution, Title VI, Title IX and Nevada State Law.  DPAC is also obligated to adhere to Title VI in its contract with Defendant SPCSA.

13.     Defendant Democracy Prep Public Schools, Inc. is the only managing member of Defendant Democracy Prep Nevada LLC whose executive director is DPAC Principal Adam Johnson.

14.     Defendant Democracy Prep Nevada LLC is a legal entity registered under the laws of Nevada, and the contract between it and the SPCSA describes it is a separate entity from the DPAC charter school itself.[3] This legal entity was first registered on February 13, 2017 under the legal form of Domestic Limited-Liability Company registered in the state of Nevada. The company is categorized under Public Combined Elementary and Secondary School. Current estimates show this company has an annual revenue of $80,555 and employs

[2] https://projects.propublica.org/nonprofits/organizations/202629354/201921429349301972/IRS990

[3] http://charterschools.nv.gov/uploadedFiles/CharterSchoolsnvgov/content/News/2020/200626-Democracy-Prep-at-Agassi-Contract-draft-5-21-20-clean.pdf

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

a staff of one, who is Defendant Adam Johnson. Democracy Prep Nevada LLC has one listed managing member, Democracy Prep Public Schools, Inc.[4]

15.     DPAC School Board [School Board] is the "final authority in matters affecting [DPAC] and responsibility for the academic, financial, and organizational performance…and curriculum."[5] The DPAC School Board is a unique entity with final oversight of DPAC operations, curriculum and disciplinary matters, and is duty bound according to its contract with Defendant SPCSA to ensure non-discrimination in accordance with Title IX and VI and federal and state law. Defendant Joseph Morgan is Chair of DPAC School Board. Defendant School Board acquiesced and was deliberately indifferent to the civil rights abuses inflicted on Plaintiffs and affirmatively approved as policy the coercive, invasive, and discriminatory curriculum programming.

16.     Defendant Kathryn Bass is a teacher and employee at DPAC. She teaches and grades the compulsory "Sociology of Change" class in which William Clark was enrolled, and she required William Clark and his fellow students to reveal and make professions about their gender, sex, religious and racial identities, and subjected those professions to public interrogation, scrutiny and derogatory labeling as part of a curriculum designed, promoted and implemented by DPPS and its CEO and Superintendent Natasha Trivers. Defendant Kathryn Bass terminated class discussion when Plaintiff William Clark and other students sought to engage critically with Defendants' class material and programming that assigned character attributes on the basis of race, sex and gender.  She also failed Plaintiff William Clark for the class at issue, and penalized him for not completing graded identity confession assignments.

17.     Defendant Adam Johnson is the school principal of DPAC and its Executive Director and Executive Director at Democracy Prep Nevada LLC. He personally oversees and implements curriculum and discipline at DPAC, and threatened a failing grade and non-graduation upon William Clark and his mother on multiple occasions if William Clark did not

---

[4] http://www.buzzfile.com/business/Democracy-Prep-Nevada-LLC-702-948-6000

[5] *See* **Exhibit B** at page 7.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

participate in the "Sociology of Change" instruction sessions featuring compelled speech, viewpoint discrimination, invasion of privacy and patent discrimination. Defendant Adam Johnson delivered on his threats, ruining Plaintiff's good college prospects built on years of hard work and a strong GPA, conferring a D- on Plaintiff William Clark for the class, even though DPAC's Handbook states "Democracy Prep does not give Ds."[6]

18.    Defendant Natasha Trivers is the new CEO of DPPS and DPPS Inc. and Superintendent of all 21 affiliated member schools, including DPAC in Nevada. She personally oversees staffing, design and implementation of curriculum nationally, including the Civics Program of which the course at issue, "The Sociology of Change" and its tandem "Change the World" project is a part. She has publicly encouraged Democracy Prep students to think for themselves and "push back" against DPPS school policies if students found them to be unjust, however she retaliated against William Clark and his mother when they did just this and asserted their constitutional rights in seeking reasonable accommodation from Defendants. Defendant Kimberly Wall stated that Defendant Natasha Trivers was aware and intimately involved in every action taken by Defendants towards Plaintiffs concerning the "civics" class and programming at issue.

19.    Defendant Kimberly Wall is assistant superintendent of DPPS in New York City, had knowledge of and personally supported, implicitly and directly, in meetings and correspondence with Plaintiffs, the above-described policy and subsequent coordinated retaliation against Plaintiffs. In at least two meetings with Plaintiffs and counsel Defendant Kimberly Wall refused reasonable accommodation, refused to repair the failing grade awarded to William for the class at issue and would give no assurances that future mandatory class programming would not involve identity confessions and labeling in class or in graded homework assignments.

20.    Defendant Joseph Morgan is Chair of the School Board at DPAC and a Professor at UNLV in Child Development. He was awarded a $2.5 million grant to fund

---

[6] *See* Handbook, attached hereto as **Exhibit C**, at page 23.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

*ReInvent Schools Las Vegas – Community Schools Initiative*, a project designed to implement a community-schools model on three elementary school campuses within the Las Vegas Valley. Additionally, he received a $300,000 award to study the implementation of site-based professional development to support inclusive practices in partnership with the Nevada Partnership for Inclusive Education (NVPIE). When not deliberately indifferent towards Plaintiffs, Defendant Joseph Morgan actively directed, supervised and was personally involved in the discriminatory retaliation and policy of compelled speech imposed on Plaintiffs since September of this year, as evidenced in written correspondence and in meetings with Plaintiffs. He failed to take corrective measures as stipulated in the DPAC Handbook and SPCSA contract when put on notice that Defendants' actions were illegal and created a hostile environment for Plaintiff William Clark.

21.     All named Defendants are persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

22.     In 2014, Plaintiff William Clark enrolled in the sixth grade at Andre Agassi College Preparatory Academy in Clark County, Nevada. At the time Andre Agassi College Preparatory Academy fell under the operational control of Clark County School District. In December of 2016, after receiving a $12.7 million grant from the US Department of Education, New York City based Democracy Prep Public Schools (DPPS) and Democracy Prep Public Schools Inc. acquired Andre Agassi College Preparatory Academy.

23.     DPPS' acquisition of Andre Agassi College Preparatory Academy was part of a larger national expansion. DPPS had grown from its initial class of 130 sixth-graders in New York City in 2006 to roughly 6,500 students in 21 schools today. In 2018, DPPS received $21.8 million in grants from the U.S. Department of Education's Charter School Program to fund the opening of additional campuses around the country. On its website, DPPS projects its total enrollment to be 10,000 students nationally.  DPPS asserts it "funds all of its schools with only the public money we receive from the city, state, and federal government," but at the same time "seeks private philanthropy for strategic initiatives separate from the running

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

of its schools."[7]  Despite their self-professed public status and exclusive reliance on public funding, DPAC or Democracy Prep Nevada LLC and DPPS applied for and received millions of dollars in Payroll Protection Program loans under the CARES Act this summer.[8]

24.    DPPS began implementing its "civics" curriculum at the newly acquired Agassi Campus in the Fall of 2017. The acquisition met with significant resistance from parents who were skeptical of the newly arrived New York organization. Defendant Natasha Trivers, DPPS's interim CEO at the time, characterized the parental opposition to Democracy Prep in Las Vegas as comprised of "haters," and lamented the difficulty of combating this opposition because of the sheer geographic distance between the school and the organization taking it over: "We've always dealt with the haters, so to speak, but that was haters on a really large scale." She added that she regretted "not getting out in front of our parents so that they heard our voice louder than the detractors in a way that we just haven't experienced before." [9]

25.    Defendant Natasha Trivers at the time was interim CEO of DPPS during the medical leave and absence of Katie Duffy, who would later resign from DPPS. Upon her assumption of the role of full and permanent CEO more recently, Natasha Trivers began implementing a very different "civics" curriculum, although the generic name and syllabi provided to parents remained the same. Parents at DPAC were not made aware of the ideological turn in curriculum. In place of a conventional civics curriculum that addressed the workings of the democratic system, political history, and the importance of civic engagement, Trivers' new DPPS curriculum inserted consciousness raising and conditioning exercises under the banner of "Intersectionality" and "Critical Race Theory." These sessions, according to the instruction materials exhibited herein, are not descriptive or informational in nature, but

---

[7] http://democracyprep.org/about/

[8] https://www.cnn.com/projects/ppp-business-loans/businesses/democracy-prep-public-schools

[9] https://www.the74million.org/article/democracy-preps-expansion-woes-raise-questions-about-whether-civics-education-can-be-brought-to-scale/

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

normative and prescriptive: they require pupils to "unlearn" and "fight back" against "oppressive" structures allegedly implicit in their family arrangements, religious beliefs and practices, racial, sexual, and gender identities, all of which they are required to divulge and subject to non-private interrogation. Some racial, sexual, gender and religious identities, once revealed, are officially singled out in the programming as inherently problematic, and assigned pejorative moral attributes by Defendants.

26.     Because the so-called "civics" curriculum implemented by Defendant Natasha Trivers carried the same name as the previous curriculum promoted by former DPPS CEO Katie Duffy, parents at DPAC like Gabrielle Clark were not aware of the turn towards coercive, ideological indoctrination until they began seeing the detrimental effects it worked upon their children. [10]

27.     At the former Andre Agassi College Preparatory Academy and at DPAC, Plaintiff William Clark first developed his academic interests in musicology and sound engineering, a subject that he hopes to pursue in college. He aspires to attend Berkley School of Music or New York University, while his mother hopes he chooses Carnegie Mellon. As a 12th grader, he is beginning the application process to college right now. He does all of this while working as a shift manager at a local fast food chain restaurant in order to help his family financially, managing intermittent "virtual learning," and living through this year's waves of lockdowns, stay-at-home orders and social unrest.

28.     At the end of August of this year, at the start of his final school year, William Clark began the year-long "Sociology of Change" class required for all DPAC seniors and taught by teacher Kathryn Bass. The class runs in tandem with another project-based class,

_____

[10] As a practical matter, Plaintiffs cannot simply transfer to another school. They are economically disadvantaged and DPPS and DPAC continue to actively discourage midyear senior transfers as policy, as evidenced by their resistance to providing plaintiffs with educational records. In a past email titled "no documents for transfers" sent to defendant administrators, DPPS founder Seth Andrews stated "We are absolutely within our rights NOT to help transfers in any way transfers mid-way senior year. No transcripts, no letter of recommendation, nothing. I'm happy to discuss but no one at DPPS is permitted to help a senior who wants to transfer out with in any way. Feel free to refer angry kids or parents to me. But consider this non-negotiable."

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

"Change the World," in which students carry out a political or social work project under the guidance of a defendant Kathryn Bass and with input from other students.[11]

29.     After Plaintiffs objected in early September to the coercive and ideological nature of the "Sociology of Change" class, DPAC Principal Adam Johnson informed Gabrielle Clark that the theoretical basis of the revamped "Sociology of Change" course is known as "intersectionality," and is inspired by political activist, academic and "Critical Race Theory"[12] proponent Kimberlé Crenshaw, who is featured prominently in the course materials attached hereto. Defendants would later deny in a meeting with Plaintiff Gabrielle Clark that the class was infused with "Critical Race Theory."  Plaintiff William Clark's first graded assignment for the class worth 10pts required him to reveal his racial, sexual, gender, sexual orientation, disabilities and religious identities. Plaintiff William Clark was required to submit his race, gender, sexual orientation, disabilities "if any" in a homework assignment due by September 21 and which was "graded for completion" for a total of 20pts. Upon information and belief such assignments continued at least until October of this year.

30.     "Hello my wonderful social justice warriors!" Defendant Kathryn Bass greeted William Clark and his class on or about September 8th of this year.[13] Ms. Bass then requested each student to "label and identify" their gender, racial and religious identities as part of "an independent reflection" exercise which was graded. The next step was to determine if "that part of your identity have privilege or oppression attached to it."[14] Privilege was defined as "the inherent belief in the inferiority of the oppressed group."[15] The teacher's material stated

---

[11] A copy of the DPAC curriculum and syllabi is attached hereto as **Exhibit D**.

[12] Defendants' class wears many hats, and defendants describe it in various ways, including "Intersectionality," "Critical Race Theory" and "Sociology of Change." Rather than disambiguating the various titles and characterizations, plaintiffs focus on the specific harms inflicted on them by defendants' class programming.

[13] *See* **Ex. A** at page 30.

[14] *Id.* at page 11.

[15] *Id.* at page 2.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

who qualified as oppressors, and who in virtue of their gender and race harbored "inherent belief in the inferiority" of others.[16] As a result, Kathryn Bass explicitly assigned moral attributes to pupils based on their race, gender, sexual orientation and religion. William Clark felt that if he had submitted to the terms of this exercise, he would have been in effect adopting and making public affirmations about his racial, sexual, gender identities and religious background that he believed to be false and which violated his moral convictions. He also did not wish to profess his identities on command in a non-private setting.

31.     A "vocab reminder" visual graphic from the same class instructed participants that "oppression" is "malicious or unjust treatment or exercise of power."[17] The lesson categorized certain racial and religious identities as inherently "oppressive," singling these identities out in bold text, and instructed pupils including William Clark who fell into these categories to accept the label "oppressor" regardless of whether they disagreed with the pejorative characterization of their heritage, convictions and identities. The familial, racial, sexual, and religious identities that were officially singled out and characterized as "oppressive" were predetermined by Defendants' class material from the outset, highlighted as such in bold text, antecedent to any discussion between student and teacher. Plaintiff William Clark could not bring himself to accept or affirm these labels, which he conscientiously believed were calumny against his self-identity and his family. What William Clark refused to do was to submit to racial, sexual, and religious labeling exercises carried out in a non-private setting which was coercive in its very nature and trafficked in intimate personal matters that are outside the legitimate scope of state-funded and controlled public education.

32.     After Defendant Kathryn Bass directed William Clark and his fellows to "label and identify" their various identities, and place them in the designated "oppressive" categories, the next step was to "breakout" into groups to discuss with other pupils, asking

---

[16] *Id.*

[17] *Id.* at page 23.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

and answering accusatory personal questions, including "Were you surprised with the amount of privilege or oppression that you have attached to your identities" and "How did this activity make you feel."[18] Those students who did not "feel comfortable or safe enough to do so," presumably those whose identities were oppressive, were permitted to refrain from divulging the information to other students in their group, Defendant Kathryn. Bass assured them. [**Id.**] However, discomfort was not relieved by Kathryn Bass' offered dispensation, according to William Clark. The pre-set structure of the class ensured that any pupil of a certain perceived race, gender or sex who declined to participate only highlighted his status as an "oppressor" who harbored inherent "privilege." Pupils remained visible to one another in the classes that were virtual, defendant Kimberly Wall said, their faces stacked around the teacher "like the opening credits of the Brady Bunch," as Ms. Wall would later describe it to Plaintiffs. Defendants' class presentation also stated that denial of these identity characterizations amounts to unjust privilege "expressed as denial."[19] Defendants' class exercises forced upon William Clark a deliberately designed, psychologically abusive dilemma: participate in the exercise in violation of his conscience and be branded with a pejorative label; or conscientiously refrain from participation, and suffer isolation from his classmates and be maligned by the same labeling regardless.

33.     The official, derogatory labeling included in the DPPS/DPAC curriculum programming was not only based upon invidious racial distinctions, but also upon the basis of religious, sexual, and gender discrimination.  In addition to the "white" racial identity, Defendants singled and assigned inherent moral attributes to pupils who fell into male, heterosexual gender/sex identities and Christian religious categories, calling them intrinsically oppressive, the materials defining "oppression" as "malicious or unjust" and "wrong."[20]. Plaintiff William Clark was compelled to participate in public professions of his racial,

---

[18] *Id.* at page 22.

[19] *See* **Exhibit A**, page 2.

[20] *See* **Exhibit A**, page 11.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

religious, sexual, and gender identities, and would be labeled as an "oppressor" on these bases by Defendants. Plaintiff William Clark was obliged to profess himself complicit in "internalized privilege [which] includes acceptance of a belief in the inherent inferiority of the [corresponding] oppressed group" as well as supporting "the inherent superiority or normalcy of one's own privileged group." As a male, William Clark's identities were "malicious and unjust" and "wrong" whether or not he was conscious of these alleged facts, and whether or not he was personally responsible for any acts or omissions[21]. By professing his sexuality at the teacher's command, William Clark would in effect be submitting to these derogatory labels. William Clark and his fellow students were instructed that any denial of these characterizations itself amounts to unjust privilege "expressed as denial"[22]. Plaintiff William Clark's female teacher instructed him that only members of the male sex were capable of committing "real life interpersonal oppression", because "interpersonal sexism is what men to do women"[23]. This was not descriptive instruction, but compulsory, graded normative exercises in which Plaintiff William Clark was required to participate.

34.     William Clark and his mixed-race family belong to many of the groups characterized as "oppressive" and "wrong" by Defendants. The assignment of these derogatory labels based upon racial, sexual, gender and religious upbringing created a hostile environment for Plaintiff William Clark, who for instance was raised according to Judeo-Christian precepts and traditions by his mother.  Defendants' curriculum programming and Kathryn Bass' actions labeled Christianity as an example of an oppressive ideology and institution against which students should "fight back" and "unlearn."[24] The material makes explicit the "unlearning" is to take place in class, at the direction of the teacher. In fact, one

---

[21] *See* **Exhibit A,** page 11.

[22] *See* **Exhibit A,** page 2.

[23] *See* **Exhibit A,** page 9.

[24] *See* **Exhibit A,** page 33.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

slide that William Clark was exposed to states "We have a lot of unlearning to do."[25]. Defendants' exercises and class programming was normative, not descriptive, and aimed to foment in pupils an inward conversion regarding personal moral and spiritual convictions they brought with them to the classroom from their personal experiences and families.

35.     Professing one's racial, sexual and religious identities on command, and exposing those professions to the scrutiny of others, was a regular and official practice of the DPPS/DPAC "Sociology of Change" curriculum programming, which William Clark was required to perform repeatedly, and not just in the beginning classes. The terms of this practice were authored by DPPS, as DPPAC and DPPS Defendants informed Plaintiffs in a mid-November meeting. "On the Google Doc write down your individual identity," Defendant Kathryn Bass directed Plaintiff William Clark and his classmates in one virtual online session.[26] "Fill out your identities again," she reiterated. Individual identities to be written down and submitted for grading included:

Race/Ethnicity/Nationality: _____

Gender:_____

Socioeconomic Status:_____

Disabilities: _____

Religion: _____

Age: _____

Language: _____ [**Id.**]

36.     The above assignment was graded and the assignment sheet included an asterisked caveat at the end: "This list is private! No one else will see it." The assurance proved to be false, however, because the entry of identities was required to be submitted to the teacher, which she could see and muse over; and although students like Plaintiff William Clark did not know it, by entering their intimate personal information onto the student assignment Google

---

[25] *See* **Exhibit A,** page 35.

[26] *See* **Exhibit A,** page 34.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Doc database, it immediately became visible to all DPAC teachers and administrators and remains so to this day, in contravention of the written privacy assurance Defendants gave to Plaintiff William Clark and his fellow students, as Plaintiffs and counsel were later informed by Defendants in a mid-November meeting. Defendants also conceded to Plaintiffs and counsel in a mid-November meeting that school supervisors including Defendant Adam Johnson could and would "tune in" to the classroom sessions unbeknownst to students like Plaintiff William Clark, who were at the time in acute discomfort as their gender, race, disabilities "if any", and sex were being confessed, interrogated, and labeled on Zoom.

37.     DPAC and DPPS Defendants including Kimberly Wall conceded in meetings with Plaintiffs in mid-November and again in early December with counsel that required exercises and graded homework assignments involving identity confessions as described above indeed occurred. Defendants said in the mid-November meeting that revealing identities was "encouraged." Defendants including Kimberly Wall refused to assure Plaintiffs that graded identity confession assignments or in class exercises would not occur again in future "Sociology of Change" and "Change the World" classes that William Clark is required to attend for graduation. Defendants' current position by counsel is that they will not expunge the failing grade they gave plaintiff William Clark or allow him to take an alternative class but that he may partially repair his grade for last trimester's "Sociology of Change" class if he completes all the assignments, which would still not be full credit.

38.     Defendants' curriculum made attacks against the integrity of Plaintiff William Clark and his mother's family relationships. Families "reinforce racist / homophobic prejudices,"[27]. William Clark's deceased father was white, and he died when William was too young to know him. The DPPS/DPAC teacher presentation material purports to supply substantial information as to what sort of man he was, however, and what sort of relationship he had with Plaintiff William Clark's black mother. "Interpersonal racism is what white

---

[27] *See* **Exhibit A,** at page 36. Upon information and belief this position concerning families is in keeping with DPPS and Natasha Trivers' express, official, and public promotion of organizations that promote the dismantling of "Western prescribed nuclear family structure."

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

people do to people of color close up," one "Sociology of Change" curriculum slide declares, with examples including "beatings and harrassments."[28] Defendants do admit that not all white people may be guilty of individually performing such acts, but because white people belong to a "dominant group," invidious distinctions are justified: "*Some* people in the dominant group are not consciously oppressive...Does this make it OK? No!"[29]

39.     With green eyes and blondish hair, Plaintiff William Clark is generally regarded as white by his peers, and despite having a black mother, is so light skinned that he is usually presumed "white" by all others. He is the only apparent white boy in his class, in fact, and is regularly reminded of it. Still, the DPPS/DPAC "Sociology of Change" curriculum programming which William Clark had to submit to says not to worry[30]:



And again:

[28] *See* **Exhibit A,** at page 9.

[29] *See* **Exhibit A,** at page 10.

[30] *See* **Exhibit A.,** at pages 8, 24.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

40.     The tendentious terms in which DPPS/DPAC's mandatory "Sociology of Change" class was presented to Plaintiff William Clark and his classmates made rational classroom discussion virtually impossible, thus ensuring a hostile educational environment. Because Defendants' programming predesignated guilt and innocence to individuals for racial, sexual, and gender injustice in the very terminology, it forced pupils to adopt these premises at the outset, frustrating good-faith deliberation between students and teacher.

41.     It is therefore predictable that one of Plaintiff William Clark's first "Sociology of Change" sessions at DPAC on or about September 10, 2020 erupted into racially charged tumult, and teacher Kathryn Bass terminated discussion when students, including William Clark, objected to her derogatory, race-based labeling.  Her actions both intimidated him from speaking out in class further and was an official endorsement of an ideology he could not in conscience affirm. This class session was conducted in a virtual online Zoom forum, and Plaintiff Gabrielle Clark immediately complained abouts its disorder and intimidation to Defendant Adam Johnson, principal of DPAC. In a meeting with Plaintiffs DPPS and DPAC Defendants would neither confirm nor deny whether they generated a report regarding the incident. This initial online incident and sitting through classes described above traumatized William Clark, discouraged and chilled his speech, and he did not want to participate further.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

His mother also did not want him to participate further, and told Defendants repeatedly, complaining specifically of the coercive identity revelations and the subsequent hostile environment Defendants were fostering.

42.     Defendants informed Plaintiff William Clark that he must return to and complete the "Sociology of Change" class, or he would not be permitted to graduate from high school. Plaintiffs spoke with school officials on multiple occasions from September to the present to express their conscientious objection to the programming of the class and assert their rights to abstain from participating in a class that was coercive, invasive and discriminatory. But the response from increasingly higher levels DPAC and DPPS officials was the same: don't participate, don't graduate.

43.     Plaintiff Gabrielle Clark spoke with DPAC Principal Adam Johnson on or about September 15, 2020 to discuss her and Plaintiff William Clark's concerns about the abusive and discriminatory nature of DPAC/DPPS' "Sociology of Change" class taught by Defendant Kathryn Bass, as well as the identity confessions and labeling, which Defendants in a mid-November meeting would concede was "encouraged." Defendant Adam Johnson, DPAC principal and Democracy Prep Nevada LLC Executive Director, dismissed Plaintiffs' concerns, instead delivering a lecture on the virtues of "intersectionality" theory that inspired the class, and should inspire them. He denied the class had anything to do with "Critical Race Theory." He told Plaintiffs that the course was required for graduation and he would not allow William to opt out of participation.

44.     On September 16, 2020 Plaintiff Gabrielle Clark appealed in a written email to DPAC School Board Chair Joseph Morgan, copying Principal Adam Johnson and DPPS superintendent Kimberly Wall. "My son is the only white student in this class, as far as we can tell. This teacher is blatantly justifying racism against white people thereby putting my son in emotional, psychological, and physical danger. This is not ok. Something needs to be done to remedy this situation immediately." She asked to be contacted immediately in order to discuss a workable solution.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

45. On September 17, DPAC School Board Chair and Defendant Joseph Morgan replied without any solution or offer of dialogue, instead laying out in an email a four-tier bureaucratic process through which Plaintiffs William and Gabrielle Clark would be required to process any complaints. Defendant Joseph Morgan was included in nearly every stage of negotiations for accommodation in correspondence and telephonic meetings with Plaintiffs. Upon information and belief he and the DPAC School Board he chairs screened and approved the curriculum programming at issue, and took no corrective action when complaints were raised.

46. In a signed letter dated September 17, 2020, DPAC Principal Adam Johnson wrote to Plaintiff Gabrielle Clark that "[a]fter reviewing the documents from Ms. Bass, the course syllabus, and hearing your concerns, I have determined that the Sociology of Change course is still a valuable learning experience for William (and his classmates) and will continue to be a required course for graduation."[31]

47. Again, on October 12, 2020, DPAC Principal Adam Johnson sent an email to Gabrielle Clark in response to her and William's complaints about the discriminatory identity labeling, stating "I know you have disagreements with some of the information shared in the Sociology of Change course, however, as I mentioned the course is required for graduation." On the same day Gabrielle Clark responded "William will not be attending Sociology of Change. The class violates his civil rights. Retaliation with threats to his graduating is also a violation of his civil rights. If you'd like to discuss an alternative to this class, I am available anytime."

48. On October 19, 2020 Plaintiff Gabrielle Clark speaking for herself and William Clark sent an email to Defendants Joseph Morgan, DPPS assistant superintendent Kimberly Wall and DPAC principal Adam Johnson stating "William Clark will not be participating in any type of Critical Race Theory class. This includes but isn't limited to Sociology of Change. It's a direct violation of his civil rights. Mr. Adam Johnson has threatened retaliation by

---

[31] *See Johnson Letter*, **Exhibit E.**

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

preventing William from graduating unless he submits to having his civil right violated. This is unacceptable."

49.     Perhaps sensing that litigation might be looming, DPAC Principal and Executive Director Adam Johnson on October 19, 2020 moderated his position: he wrote that Plaintiff William Clark could not go and not do the assigned work if he chooses, and fail and be ineligible for graduation. Or he could complete a "minimum" of the exercises and assignments, and then receive a grade of a C minus, the school's lowest passing grade, which might disqualify him from being considered for admission to his preferred colleges of NYU and Berkeley School of Music, but at least it would not be a failing grade. Or William could participate fully in the "Sociology of Change" class, pass with flying colors and face no grade penalization. These condescending offers, both coercive and retaliatory against constitutionally protected speech and behavior, again forced Plaintiffs to choose between fidelity to conscience and their right to a public education. Defendants to this day offer no accommodation that does not include grade penalization.

50.     On October 29, 2020, Plaintiff Gabrielle Clark requested by email from Defendants Kimberly Wall, Joseph Morgan and Adam Johnson, "I would like a course syllabus, assignment materials, and a detailed description of options that are being considered. I need those things in order to access how to move forward amicably. On another note, I have asked for William's last year's report card. We're trying to get ready for college, as this is William's senior year." As happened time and again, Plaintiffs received instead from Defendant Kimberly Wall only a wholesome and vague "Sociology of Change" course syllabus that disguised the true nature of the class evident in the actual materials used on a day-to-day basis with student[32]. No future "assignment materials" or other class literature was provided, no "detailed description of options." Extant course materials at issue appear to have been recently edited by Defendants. To this day Defendants offer no accommodation "options" beyond participating fully in the class or penalization, and Defendants refused to

---

[32] *See* **Exhibit D.**

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

assure Plaintiffs and their attorney in mid-November and early December meetings that identity confessions, derogatory labeling and "unlearning sessions" are not a part of the remainder of either the "Sociology of Change" or "Change the World" project class.

51.     On November 16, Plaintiffs' counsel sent a letter to Defendants Kimberly Wall, Adam Johnson, and Joseph Morgan seeking accommodation and informing them that their actions were illegal[33]. After two meetings in November and December and in correspondence between Defendants and Plaintiffs' counsel, Defendants have offered no reasonable accommodation, have refused accommodations proffered, have refused to remove or change the failing grade without grade penalizations and returning to and completing the invasive, derogatory coursework at issue.

52.     Defendants' intolerance of Plaintiffs William and Gabrielle Clark's principled objections to the "Sociology of Change" and Defendants' refusal to reach reasonable accommodation is aggressively dismissive of protected speech and behavior. Accommodation with an alternative class, a virtual class at a local community college, an extra credit assignment all have been proposed by Plaintiffs and declined by Defendants. The refusal of any reasonable accommodation to Plaintiff William Clark's conscientious objection contradicts explicit public statements by DPPS and Superintendent and CEO Natasha Trivers, who both have encouraged students "to use their voice to stand up for what is right, even if that means pushing back against a school policy, occupying a cafeteria, or staging a walkout" in online posts on March 30, 2020 from the school's corporate and Ms. Triver's personal Twitter.com social media accounts:

. . .

. . .

. . .

. . .

. . .

---

[33] *See* Counsel Letter #1, **Ex. F.**

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

53.     Offering no reasonable accommodation, Defendants followed through on their threats of retaliation and gave Plaintiff William Clark a D- for the "Sociology of Change" class, which by DPPS standards is failing. As Clark County was headed towards renewed Covid-19 lockdowns right before Thanksgiving, Defendant Adam Johnson delivered the news personally with an email to Plaintiffs Gabrielle and William Clark on November 20, 2020, copying Defendant Kimberly Wall. The assignment of a D- grade for the "Sociology of Change" class taught and graded by Defendant Kathryn Bass is a contravention of DPAC's official school handbook, and is intended as a malicious slight by Defendants against Plaintiffs specifically designed to harm Plaintiff William Clark's academic and professional career after high school. According to the DPAC handbook, "Democracy Prep does not give Ds. We are aware that the lowest grade most colleges and universities will accept for entry is a C-. Because our mission is to send every DPPS scholar to the best colleges and universities, we align our grading practices with these standards."[34] In retaliating against Plaintiff William Clark for his protected speech, Defendants violated their own standards.

54.     As a senior, William Clark is now at work on his FAFSA application for colleges and is plying away at his other DPAC classes, despite the fear and loss of trust of in

---

[34] *See* **Exhibit C.**

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

school officials resulting from this ordeal. His best subject is pre-calculus at the moment and he works at a fast-food restaurant most evenings to support his family. Plaintiff William Clark has suffered severe mental and emotional distress as a result of Defendants' actions and the hostile environment created by their official actions, all of which has negatively impacted his academic performance, personal relationships and future professional and academic prospects. He is in therapy addressing these harms as well as the ongoing harassment and discrimination that is being inflicted on him by Defendants under the guise of "civics." Plaintiffs are unmoved by individual Defendants' professed intentions to "change the world"; Plaintiff William Clark is at present living in fear of Defendants and reasonably anticipates further retaliation. His fears have been confirmed. Upon information and belief Defendants again blatantly retaliated against Plaintiffs and suspended William Clark on December 16, 2020, falsely accusing him of "racism" to preempt any further self-assertion from Plaintiffs.

55.     Plaintiff Gabrielle Clark is also personally suffering from the shock, anxiety, and guilt associated with having entrusted her son to adult custodians who have set upon "unlearning" the Judeo-Christian values she imparted to her son, and from exposing him to derogatory labeling and discrimination and retaliation on the basis of his perceived race, sexuality and gender. She has suffered severe emotional distress as a result and is now experiencing consequent heart palpitations, weight gain and insomnia.  She has watched helplessly as Defendants doubled down again and again on their coercive ideological policy towards her son, threatening his graduation and academic and professional future.

## COUNT I

**VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**
**(42 U.S.C. § 1983) (Freedom of Speech: Compelled Speech & Retaliation)**

56.     Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

57.     The First Amendment provides: "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  petition the Government for a redress of grievances."[35]

2  58.  The United States Supreme Court has held with respect to public schools that

3  "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or

4  petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters

5  of opinion or force citizens to confess by word or act their faith therein." *W. Va. Bd. of Educ.*

6  *v. Barnette*, 319 U.S. 624, 642 (1943). Defendants thus possess a duty to Plaintiff William

7  Clark to honor his protected First Amendment right. Defendants violated that duty, and their

8  unlawful actions are ongoing.

9  59.  Defendants repeatedly compelled Plaintiff William Clark's speech.

10  Defendants compelled William Clark to proclaim in class and in assignments his race, color,

11  sex, gender and religious identities for which he in turn would receive official, derogatory

12  labels. Defendants predetermined programming required Plaintiff to accept and affirm that

13  "privilege" and "oppressor" as officially defined by Defendants attached to himself in virtue

14  of his professed identities, and then to reflect and interrogate on this in a non-private setting

15  within preset, ideologically loaded parameters set by Defendants.

16  60.  These unlawful actions were done with the specific intent to deprive Plaintiff

17  William Clark of his right to free speech, which Defendants do not value.

18  61.  Defendants and their employees and agents intended to violate Plaintiff

19  William Clark's right to free speech, and deliberately invade the sphere of intellect and spirit

20  which it is the purpose of the First Amendment to our Constitution to reserve from all official

21  control. *See West Virginia State Board of Education v. Barnette*, 319 U.S. 624.

22  62.  Defendants were deliberately indifferent to the consequences of their unlawful

23  actions, actions which are overtly custom and practice for Defendant DPAC and DPPS, who

24  authored and orchestrated curriculum programming at issue which was then approved and

25  enforced in the face of Plaintiffs' objections by Defendants School Board and its Chair Joseph

26  Morgan.

27

28  [35] *See* **U.S. Const. Amend. I.**

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

63.     Defendants Kathryn Bass, Adam Johnson, Kimberly Wall, Joseph Morgan and Natasha Trivers' actions including malicious, coordinated retaliation for Plaintiff William Clark's protected behavior were motivated by an animus for Plaintiff William Clark's come-uppance given his perceived race, color, gender and sexuality, disfavored identities which Defendants explicitly and openly disparage and mock. Defendants ruined Plaintiff's good college prospects built on prior years' hard work and good grades. Defendants show no intention of altering their program of compelled speech in the future. Plaintiff seeks damages, including punitive damages, against them.

64.     As a direct and proximate consequence of Defendants' unlawful acts, Plaintiff William Clark has and continues to suffer damages for loss of his First Amendment rights, for pain and suffering, emotional distress, and damage to his academic and professional future and reputation.

65.     Absent an injunction, Plaintiff William Clark will suffer irreparable harm because he will be denied a high school diploma, suffer further damage to his academic record, and he will not go to college. At present he is being compelled to return to and participate in Defendants' unlawful activity, and he continues to suffer emotional distress and discrimination in the face of it.

## COUNT II

### VIOLATION OF THE FIRST AMENDMENT TO THE U.S CONSTITUTION (42 U.S.C. § 1983) (Freedom of Speech: Association, Viewpoint Discrimination & Retaliation)

66.     Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

67.     On or about September 10, 2020, Defendant Kathryn Bass terminated class discussion when students, including Plaintiff William Clark, objected to a PowerPoint slide she showed in Defendants' "Sociology of Change Class" stating that "Reverse Racism Doesn't Exist" and "Black Prejudice Does Not Affect the Rights of White People." Plaintiff William Clark's stated objections was that everyone can be racist, that prejudice anywhere

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

from anyone can harm others. For this protected speech and others like it, Defendant Kathryn Bass terminated class discussion immediately with the intent to chill and discourage future objections to Defendants' sponsored politicized ideology.

68.    Defendants Kathryn Bass's actions, and the subsequent coordinated efforts from Defendants to punish and fail Plaintiff William Clark, was intended to chill protected speech that Defendants did not themselves share concerning their ideologically loaded program concerning race, gender, sexuality and religion.

69.    Defendant Kathryn Bass, who was not adequately trained by Defendants, instructed Plaintiff William Clark and other that denial of "privilege" which she attached to their identities was itself "privilege," and defined "privilege" in a non-descriptive, normative and derogatory manner. Defendant Kathryn Bass thus created a coercive environment where any objection from Plaintiff William Clark was and would be officially labeled pejoratively. Defendants' program was intended to and did chill and discourage Plaintiff William Clark's speech.

70.    Defendants, their agents and employees threatened and punished Plaintiff William Clark's objection to entering into and participating in the above politicized program and did so due to his perceived race, color, sex and gender. Defendants' punishing demand that he return to the psychologically abusive, politicized exercises where he must confess and submit to official, pejorative labeling violates his right to free association and assembly. Failing and threatening his graduation from high school is unlawful retaliation that itself amounts to viewpoint discrimination.

71.    As a direct and proximate consequence of these ongoing unlawful acts, Plaintiff William Clark has and continues to suffer damages for loss of First Amendment rights, for pain and suffering, emotional distress, and damages to his academic and professional future and reputation.

72.    Absent an injunction, Plaintiff William Clark will suffer irreparable harm because he will be denied a high school diploma, suffer further damage to his academic record, and will not go to college; he will be compelled to return to and participate in Defendants'

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

unlawful activity, and continue to suffer emotional distress and discrimination in the face of it.

### COUNT III

### VIOLATION OF THE FIFTH & FOURTEENTH AMENDMENT
### (42 U.S.C. § 1983) (Due Process: Invasion of Privacy & Equal Protection)

73.     Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

74.     Under the Fourteenth Amendment of the United States Constitution, the Government may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. I.

75.     Defendants and their employees and agents owed duty under the due process clause of the Fourteenth Amendment's Plaintiff William Clark's privacy.

76.     Defendants violated Plaintiff William Clark's substantive due process right to privacy.

77.     Despite Defendants' assurances to Plaintiff William Clark and other students, Defendant Kathryn Bass' confessional exercises were not in fact private or limited to the herself and classroom participants. DPPS and DPAC Defendants conceded to Plaintiffs and counsel in a mid-November meeting that school supervisors including Defendant Adam Johnson could and would "tune in" to the classroom sessions unbeknownst to students like Plaintiff William Clark, who were at the time in acute discomfort as their gender, race, disabilities "if any" and sex were being confessed, interrogated and labeled.

78.     The same is true for the written, graded assignments requesting identity divulgence submitted to Defendant Kathryn Bass on a database which in fact was visible to all other DPAC teachers and supervisors, despite Defendant Kathryn Bass' explicit and written assurances in Defendants' course material that submissions would be private.

79.     Defendants' program of directing and requiring students to reveal, "unlearn" and interrogate intimate matters relating to gender, sex, race, color and religious identities for the service of an ideological, politically non-neutral purposes violate Plaintiff's William

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Clark's right to privacy and is official intrusion upon seclusion. This curriculum programming

2   was screened and approved by Defendants DPAC School Board and SPSCA.

3        80.    Defendants' unlawful actions are ongoing, intentional violations of Plaintiff

4   William Clark's protected right to privacy that serve no reasonable state or educational interest

5   and yet to express policy of Defendants DPPS.

6        81.    Defendants Kathryn Bass, Adam Johnson, Joseph Morgan, Kimberly Wall and

7   Natasha Trivers in their individual and official capacities continue to violate Plaintiff William

8   Clark's right to privacy and have threatened and retaliated against him on the basis of his

9   perceived race, color, gender, sex and religious background.

10        82.    The Equal Protection component of Due Process Clause guarantees persons

11   the equal protection of the laws and prohibits the government from treating persons

12   differently—on the basis of their race, religion, national origin, or alienage—than similarly

13   situated individuals.

14        83.    Defendants Katheryn Bass and the curriculum programming promoted by

15   Defendants Natasha Trivers, Kimberly Wall, Joseph Morgan and Adam Johnson label some

16   school age students, but not others, as "oppressors," a condition which is "malicious and

17   unjust" and "wrong," solely in virtue of their racial, religious and sexual identity. Plaintiff

18   William Clark was so labeled by his teacher for his gender, religious affiliation and perceived

19   race, while other students were not. Because of his apparent race and color—unique in his

20   class—Defendants gave Plaintiff William Clark more work to do, more "unlearning," more

21   self-interrogation on view to other students similarly situated. This curriculum programming

22   was screened and approved by Defendants SPSCA and DPAC School Board, and generated

23   and promoted by DPPS and Defendant Natasha Trivers.

24        84.    When Plaintiff William Clark wished to absent himself from the harm-

25   inducing process and seek accommodation, Defendants Kathryn Bass, Adam Johnson,

26   Kimberly Wall, Joseph Morgan and Natasha Trivers retaliated by threatening and penalizing

27   him, despite publicly encouraging other students to do exactly what Plaintiff William Clark is

28   doing now: "to use their voice to stand up for what is right, even if that means pushing back

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

against a school policy." These Defendants show no intention of changing their behavior and acted on an animus for Plaintiff William Clark's perceived race, gender, and sex, and Plaintiffs seek damages including punitive damages against them. Defendants regarded Plaintiff William Clark's conscientious objection as a right and privilege not reserved for him on account of his perceived race, color, sex, and gender, and would have accommodated and not have retaliated against a similarly situated student of different perceived race, color, sex and gender that Defendants explicitly favor.

85.     Defendants' direct actions, and implicit condoning of a plan to fail and frustrate Plaintiff William Clark, and ransom his high school diploma, effectively forecloses his chances at a good college education. Plaintiff William Clark has a right to a public high school degree and college education, and Defendants' efforts to undermine that right because of animus for his perceived race, gender and religious background is a violation of William Clark's Due Process and Equal Protection Rights.

86.     As a direct and proximate consequence of these ongoing unlawful acts, Plaintiff William Clark has and continues to suffer damages for loss of First Amendment rights, for pain and suffering, emotional distress, and damages to his academic and professional future and reputation.

87.     Absent an injunction, Plaintiff William Clark will suffer irreparable harm because he will be denied a high school diploma, suffer further damage to his academic record, and will not go to college; he will be compelled to return to and participate in Defendants' unlawful activity, and continue to suffer emotional distress and discrimination in the face of it.

## COUNT IV

### VIOLATION OF THE FIRST & FOURTEENTH AMENDMENT
### (42 U.S.C. § 1983) (Substantive Due Process: Establishment Clause, Family Integrity & Retaliation)

88.     Plaintiffs incorporate the allegations and averments contained in paragraphs 1 through 73 as if fully set forth herein.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

89.     The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property without due process of law." The Supreme Court has expanded individual rights in personal matters to include parental rights and family integrity. *See Meyer v. Nebraska,* 262 U.S. 390, 401-02 (1923) (finding the protection of parental autonomy linked to the American culture's placement of childrearing responsibility on parents rather than the community and includes the "power of parents to control the education of their own.").

90.     Plaintiff Gabrielle Clark, mother of William Clark, brings suit on her own behalf against Defendants and claims violation of the Establishment Clause and her substantive due process right to Family Integrity. Defendant Kathryn Bass explicitly expressed an animus towards the family structure as such which she claimed in exhibited course materials to be responsible for perpetuating "bigotry and homophobia." Bass then took the further step of repeatedly instructing Plaintiff Gabrielle Clark's son to "unlearn" and "fight back" against the principles Plaintiff Gabirelle Clark imparted to him throughout his childhood, including the Christian precepts that all are equal before the eyes of God and should be judged by their actions and character rather than attributes beyond their control, including color, race, gender and sex. This extra step of "unlearning" and thought reform is non-neutral and burdens religion, and knowing this, DPAC and DPPS endeavored to keep exercises and assignments hidden from parents like Plaintiff Gabrielle Clark, who are supplied with generic syllabi and course descriptions upon inquiry.   The politicized "unlearning" of family influence, disguised from parents in deceptive course descriptions and syllabi, is mandatory and graded. This coercive program was generated and promoted by Defendants DPPS and Natasha Trivers, implemented by Defendant Kathryn Bass, and the campaign of coercing participation directly carried out by Defendants Kimberly Wall, Joseph Morgan, and Adam Johnson. Defendants' position to this day is that Plaintiff William Clark must either return to Defendant Kathryn Bass' class without any accommodating change to the class content or programming or he will not graduate.

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

91.     Parents have a right to guide and direct the upbringing of their children, and courts have honored and upheld this right. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (O'Connor, J., plurality). Defendants Kathryn Bass and Adam Johnson personally coerced Plaintiff Gabrielle Clark's son to change the fundamental beliefs imparted to him by his family in order to convert those beliefs to a preapproved set of beliefs by methods that make clear that in certain areas of ideology and belief, dissent or deviance is not acceptable. Defendant Kathryn Bass violated and sought to undermine this right, and her deliberate program of discouraging family integrity through  thought reform and "unlearning" was both endorsed and abetted by her superiors Defendants Adam Johnson, Kimberly Wall, Joseph Morgan, and Natasha Trivers, all of whom coordinated punishing action against Plaintiff Gabrielle Clark and her son when she began asking too many questions and Plaintiff William Clark stopped participating in the mandatory, confessional "unlearning" which now amounts to custom and policy for DPPS, DPAC and the DPAC School Board.

92.     Plaintiff Gabrielle Clark seeks damages and injunctive relief as Defendants continue to coerce her son into associating and participating in the above class programs, a requirement which serves no legitimate state interest and is an unreasonable intrusion into the traditional parent-child relationship.

## COUNT V

**Title VI Violation of 42 U.S.C. § 2000d et seq.**
**(Intentional and Retaliatory Discrimination on The Basis Of Color, Race and Religion against Authority, DPAC, DPPS and Defendants in their individual capacity)**

93.     Plaintiffs incorporate the allegations and averments contained in paragraphs 1 through 58 as if fully set forth herein.

94.     Defendants SPSCA, DPAC School Board, DPPS, DPAC, Democracy Prep Nevada and Democracy Prep Public Schools Inc. are recipients of federal funds, and Defendants harassed and discriminated against Plaintiffs on the basis of actual and perceived race, sex and religion in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. by intentionally supporting, promoting and implementing a curriculum

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

programming, including but not limited to the "Sociology of Change" class, with knowledge of its discriminatory content and application, which has created a hostile educational environment for those students who are actually or perceived white, biracial, male and of a Christian heritage. Defendants' behavior treated Plaintiff William Clark differently than other students on account of his racial, sexual, and religious identities. Title VI is privately enforceable.

95.     The courts have followed a broad interpretation by ruling that a local educational agency for purposes of Title VI and IX includes school boards, their members, and agents of such boards. *Meyers v. Board of Education of the San Juan School District*, 905 F. Supp. 1544 (D. Utah 1995) (34); Horner, supra, 43 F.3d at 272 (Title IX case); see also Young by and through *Young v. Montgomery County (AL) Board of Education*, 922 F. Supp. 544 (M.D. Al. 1996).

96.     Discriminatory conduct based on perceived race, gender, sex and religious heritage from Defendants include failing him and coercing him to submit to the discriminatory exercises in class. Defendants Natasha Trivers and DPPS publicly announced they encourage students to push back against "school policy" they object to on principle; Defendants departed from this stated policy with respect to Plaintiff William Clark because of his perceived race, color, sex, gender and religious background which Defendants explicitly disfavor. Defendant Adam Johnson followed through on his threats personally delivered the report card with a failing grade that contravened Defendants' own grading policy. Defendant Katherine Bass failed William Clark in accordance with Executive Director and Principal Adam Johnson's retaliatory threats. Defendants Kimberly Wall and Natasha Trivers at DPPS in the New York headquarters, oversaw and coordinated the above for three months, and refused to reasonably accommodate Plaintiffs at the direction of Defendant Natasha Trivers, who designed, promoted and implemented the coercive, invasive and discriminatory curriculum program. All of the above was manifestly intentional discrimination and disparate treatment based on Plaintiff William Clark's perceived race and color, resulting in disparate impact and effects.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

97.     Discrimination that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution constitutes a violation of Title VI when committed by any institution, entity or person that accepts federal funds.

98.     In virtue of Plaintiff William Clark's perceived racial identity, Defendants' programming required him to work more strenuously than other students of different backgrounds: he had more "unlearning" to do, more discomfort and self-interrogation to experience in class on account of his perceived race and color which is visibly different than his classmates. When Defendants Adam Johnson, Joseph Morgan, Kimberly Wall learned of his objection to this, they set about threatening and punishing rather than accommodating him, demonstrating actual animus towards Plaintiff William Clark on account of his perceived race for not confessing and interrogating his officially disapproved of identities and failing to submit to derogatory, racist labeling by school officials.

99.     Plaintiffs have been and will continue to be injured by Defendants' unlawful and discriminatory actions, which resulted in emotional distress, trauma, and included overt retaliation described in detail above, and Plaintiffs are entitled to compensatory and punitive damages.

100.    Plaintiffs are entitled to declaratory judgment, pursuant to 28 U.S.C. §2201, and a temporary and permanent injunction pursuant to Rule 65 because there is no plain, adequate or speedy remedy at law to restore Plaintiff William Clark's academic standing and prevent Defendants from continuing to practice and promote the aforementioned actions that discriminate on the basis of race, religion, gender and sexuality in violation of Title VI of the Civil Rights Act of 1964 and because the harm Plaintiffs' members will otherwise continue to suffer is irreparable.

## COUNT VI

### (Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq.)

101.    Defendants including the various Defendants in their individual capacity, violated Title IX in their deliberate indifference and active promotion of the ongoing abuse and harassment Plaintiff William Clark endured in DPAC's "Sociology of Change" class.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

102.    Title IX protects Plaintiffs from sex discrimination when they are engaged in education programs and activities that receive federal financial assistance. Among the types of sex discrimination that Title IX expressly prohibits is intentional sexual harassment. Title IX gives individuals a private right of action to bring a lawsuit for injunctive or monetary relief.

103.    After being repeatedly directed to divulge his sexual and gender identities, school officials as custom and policy and in direct acts described above publicly labeled, repeatedly categorized and stereotyped Plaintiff William Clarks' sexual and gender identities in a deliberately pejorative and offensive manner. Plaintiff William Clark was compelled to participate in this process of publicly professing identity, receiving in turn derogatory designation of "oppressor" on the basis of his sex and gender identities. This included inherent "internalized privilege [which] includes acceptance of a belief in the inherent inferiority of the [corresponding] oppressed group" as well as the "the inherent superiority or normalcy of one's own privileged group." This is a condition inherent to Plaintiff's sex and gender which is "malicious and unjust" and "wrong" whether conscious or not[36]. Denial of these qualities inherent to Plaintiff's sex and gender is itself privilege "expressed as denial."[37]   Only Plaintiff's sex can commit "real life interpersonal oppression", Plaintiff's female teacher told him, since "interpersonal sexism is what men to do women."[38]   Plaintiffs were harmed by Defendants behavior.

## **COUNT VII**

### **(Breach of Contract)**

104.    Plaintiffs incorporate the allegations and averments contained in paragraphs 1 through 85 as if fully set forth herein.

---

[36] *See* **Exhibit A,** page 11.

[37] *See* **Exhibit A,** page 2.

[38] *See* **Exhibit A,** page 9.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

105.     Under Nevada law, "the Plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the Defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). Parents like Plaintiff Gabrielle Clark were caught off guard. The acquisition of Agassi Collegiate Prep was affected under the DPPS Duffy administration, which sold a rather neutral and traditional version of "civics."  Suddenly after renewing enrollment, students were being instructed in a fringe ideology overtly hostile to core personal beliefs about home and church, race and sex, and much else. The new "Sociology of Change" violates its own DPPS charter and mission, set forth on their website and elsewhere, including its handbook[39]. DPAC violated its own Nondiscrimination, Harassment and grading standards pursuant to its own handbook.[40]  As such Plaintiffs Gabrielle Clark and William Clark claim breach of contract.

106.     Defendant's breach of contract implicates both Nevada state law and 42 U.S.C. § 1981 subsection (b) as it involves "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006) (holding "[a]ny claim brought under § 1981 ... must initially identify an impaired contractual relationship under which the Plaintiff has rights.").

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs William Clark and Gabrielle Clark pray for the following relief as to all counts:

1.     An emergency preliminary order pursuant to Rule 65 restraining and enjoining Defendants from denying Plaintiff William Clark his high school graduation and degree, and accommodating William Clark with an alternative non-discriminatory, non-confessional class that would restore him to good academic standing as he applies for college;

---

[39] *See* **Exhibit D.**

[40] Id.

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

2.     A preliminary order pursuant to Rule 65 directing Defendants to remove and expunge from the Plaintiff William Clark's academic record the D- grade at issue;

3.     For a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in the policies, practices and conduct complained of herein, enjoining Defendants, its officials, agents, employees, and all persons acting in concert or participating with them from implementing or enforcing compulsory, graded identity confessions and derogatory labeling;

4.     A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, 42 U.S.C. § 1983 from the Court that requiring students to reveal racial, sexual, gender and religious identities in a public-school classroom and graded assignments is unconstitutional compelled speech and invasion of privacy;

5.     A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants above- described curriculum programming and retaliatory acts violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.;

6.     A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants above- described actions and curriculum, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983;

7.     A declaratory judgment from the Court that Defendants' actions and curriculum programming in whole or in part violate Plaintiff Gabrielle's Clark's Fourteenth Amendment substantive due process rights to family integrity;

8.     Monetary damages, compensatory and punitive;

9.     An award of attorney's fees and costs generally and pursuant to 42 U.S.C. §1988 and any other applicable provisions;

10.     Pre-judgment and Post-judgment interest at the maximum amount permitted by law; and

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:00002-216 4234620_2 12/22/2020 3:51 PM

11.     Such other and further relief as the Court may deem just and proper.

Dated this 22nd day of December, 2020.

                                    MARQUIS AURBACH COFFING


                                    By   _/s/ Brian R. Hardy, Esq._
                                          Brian R. Hardy, Esq.
                                          Nevada Bar No. 10068
                                          10001 Park Run Drive
                                          Las Vegas, Nevada 89145

                                          Jonathan O'Brien, NYB No. 5043369
                                          (Pending Admission Pro Hac Vice)
                                          Law Office of Jonathan O'Brien
                                          43 W. 43rd St, Suite 002
                                          New York, NY 10036

                                          *Attorneys for Plaintiffs William Clark and Gabrielle Clark*

MAC:00002-216 4234620_2 12/22/2020 3:51 PM