**Marquis Aurbach Coffing**
Brian R. Hardy, Esq.
Nevada Bar No. 10068
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
bhardy@maclaw.com

Jonathan O'Brien, NYB No. 5043369
(Admitted Pro Hac Vice)
Law Office of Jonathan O'Brien
Telephone: (646) 308-1689
43 W. 43rd St, Suite 002
New York, NY 10036
Jobrien@burnsobrienlaw.com

*Attorneys for Plaintiffs William Clark and Gabrielle Clark*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GABRIELLE CLARK, individually and as parent and guardian of WILLIAM CLARK and WILLIAM CLARK, individually,<br><br>Plaintiffs<br><br>v.<br><br>STATE PUBLIC CHARTER SCHOOL AUTHORITY, DEMOCRACY PREP PUBLIC SCHOOLS, DEMOCRACY PREP PUBLIC SCHOOLS, INC., DEMOCRACY PREP at the AGASSI CAMPUS, DEMOCRACY PREP NEVADA LLC, SCHOOL BOARD of Democracy Prep at the Agassi Campus, NATASHA TRIVERS individually and in her official capacity as Superintendent and CEO, ADAM JOHNSON, individually and in his official capacity as Executive Director and Principal, KATHRYN BASS individually and in her capacity as Teacher, JOSEPH MORGAN, individually and in his official capacity as Board Chair, KIMBERLY WALL individually and in her capacity as assistant superintendent, and John & Jane Does 1-20<br><br>Defendants. | Case Number: 2:20-CV-02324-RFB-VCF<br><br>**REPLY TO DEFENDANT STATE OF NEVADA EX REL. STATE PUBLIC CHARTER SCHOOL AUTHORITY'S OPPOSITION [ECF 40] TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF 19]** |

Page 1 of 13

Plaintiffs Gabrielle and William Clark (collectively "Plaintiffs") by and through their attorneys of record herein, hereby submit their Reply to Defendant SPCSA's Opposition [ECF 40] to Plaintiffs' Emergency Motion for Declaratory and Injunctive Relief [ECF 19]. This Reply is made and based upon the papers and pleadings on file herein, the following Memorandum of Points and Authorities, and any oral argument allowed at the time of hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant State Public Charter School Authority ("SPCSA") is local educational agency that has an affirmative duty and mandate to "act swiftly" to ensure a safe environment free from racial and sexual discrimination for the pupils and parents enrolled in the public charter schools it sponsors, authorizes and monitors. SPCSA violated that duty by tolerating and acquiescing to Democracy Prep at the Agassi Campus's ("DPAC") curricular programming that compels speech and openly promotes and constitutes a hostile educational environment. SPSCA's actions and omissions foreseeably created a racially and sexually hostile environment. Plaintiffs seek an order that SPSCA observe and comply with its anti-discrimination mandate. Plaintiffs request that Democracy Prep Defendants remove the grade for the class at issue, and seek a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from hosting and conducting coercive, graded identity confession exercises and a declaration that such exercises, together with stereotype harassment, are harassment, a hostile environment and unconstitutional as violating the Title VI of the Civil Rights Act and Title IX.

### II. LEGAL ARGUMENT

#### A. SPCSA'S MANDATE AND PURPOSE IS TO PROVIDE THE RELIEF REQUESTED

In their response to Plaintiffs' motion for preliminary relief, SPSCA maintains that it merely "sponsors" and "authorizes" Nevada charter schools such as DPAC, and thus has no

power to effect the relief sought, and bears no responsibility for the harms alleged.[1] In fact, SPCSA's legislative mandate is much more robust than "sponsoring" and "authorizing," and its affirmative duty to monitor educational programs and ensure compliance through "intervention" with state and federal anti-discrimination laws is delineated in both its contract with Democracy Prep Defendants and Nevada State Law.[2]

SPCSA concedes that Nevada law requires SPCSA to "safeguard the interests of pupils"[3] and its contract with DPAC avers with regard to curriculum that "the education program shall meet or exceed Nevada's content standards,"[4] yet SPCSA still asserts in its opposition that it has no "ability or power"[5] to protect Plaintiffs' interests. Defendant references NRS 388A.366(1)(i)[6] as a bar to its "power" and proof of the limits of its oversight. However, a school is required to "provide instruction in [] core academic subjects" does not preclude a school's supervising body from fulfilling its legal obligation to safeguard the interests of pupils.

SPSCA operates like a school district, monitoring a discrete number of schools an ensuring compliance with applicable state and federal law concerning student and parental rights. SPCSA asserts that it "is, in fact, a local education agency or LEA."[7] Such a designation hardly demonstrates that SPCSA's hands are tied. NRS 388A.159 states that SPSCA be "deemed local educational agency for all purposes" where "local educational agency" means a public board of education or other public authority legally constituted within a State for

---

[1] *See* ECF No. 40, p. 1.

[2] *See* ECF No. 1. Ex. B., Sec 2.4.1, p. 11

[3] *See* ECF No. 40, p. 3. (citing NRS 388A.150(1)(b)).

[4] Compl., Ex. B., p. 16, Sec. 3.2.1

[5] *See* ECF No. 40, p. 3.

[6] *Id.*

[7] *See* ECF No. 40, p. 2 (fn1).

either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or of or for a combination of school districts or counties that is recognized in a State as an administrative agency for its public elementary schools or secondary schools." 20 U.S.C.A. § 7801.

LEAs are not passive, and, for example, are subject to the Protection of Pupil Rights Amendment ("PPRA") of the Hatch Act, which mandates that such agencies develop and adopt "local policies concerning student privacy."[8] Such confessional labeling exercises, which are serial and plainly apparent in DPAC's "capstone" curriculum materials and assignments that SPCSA approved and monitors, are in kind no different than the violative surveys for which PPRA requires parental consent, notification and good cause:

Race/Ethnicity/Nationality: _____
Gender:_____
Socioeconomic Status:_____
Disabilities: _____
Religion: _____
Age: _____
Language: _____ [9]

As shown in Plaintiffs' verified Complaint and Exhibits, these labeling exercises are not mere descriptive surveys: students are asked to categorize themselves according to racial, sexual and religious identities at the direction a public-school teacher, and then some identities and not others are pejoratively labeled. Determining and coming to terms with sex and gender identity, especially for adolescents, is an intimate and profoundly fraught process. Defendants' curricular exercises demean and invade the privacy of that process for students under their direction, glibly requiring them to "Label and identify!" gender for "10 points."[10]

---

[8] 20 U.S.C. § 1232h(c)

[9] ECF No. 1 at ¶ 35

[10] *Id.* at ¶ 29

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

The normative nature of Democracy Prep's labels that students were asked to assign to themselves was stark and extreme:

  a. Privilege is "the inherent belief in the inferiority of the oppressed group"[11] and

  b. "oppression" is "malicious or unjust treatment or exercise of power"[12] and

  c. "oppressors try to strip you try to strip you of your identity and mold you in a way that will benefit them",[13] and

  d. "oppression" is "unjust" and

  e. "wrong" regardless of whether individual members of the oppressive group are "consciously oppressive";[14]

  f. "interpersonal sexism is what men do to women";[15]

  g. "interpersonal racism is what white people to to people of color"[16]

  h. "people of color cannot be racist";[17]

  i. "the dominant groups win when you let them make you believe the ideology they created";[18]

  a. "they [dominant groups] hate to see your rise above it".[19]

The exercises, which carry the imprimatur of institutional Defendants, are discriminatory on their face, weighing heavier on students of certain identities more than others. SPCSA knew about this program and tolerates and sponsors such behavior, even as it

---

[11] ECF No. 1, Ex. A. at p. 2

[12] *Id.* at p. 24

[13] *Id.* at p. 16

[14] *Id.* at. p. 11

[15] *Id.* at p. 34

[16] *Id.* at p. 34

[17] *Id.* at p. 25

[18] *Id.* at p. 43

[19] *Id.* at p. 43

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

flouts its anti-discrimination and safe environment mandate and inflicts burdens on that subset of students who are subject to pejorative labeling. SPSCA's opposition does not deny knowledge of the aforementioned harmful curricular exercises, but rather professes impotence in addressing them, because SPSCA says it must defer to a school's right to choose its own curriculum. A school's discretion to determine its own curriculum cannot amount to a permission slip to compel protected speech or foreseeably create a hostile environment, and to suggest as much would contradict SPSCA's own mandate and purpose.  SPSCA's oversight responsibilities are not passive; SPSCA is empowered, mandated and obligated by statute and contract to direct DPAC Defendants to cease and correct their unlawful conduct, which in this case violates First Amendment Speech and constitutes a hostile environment pursuant to Title VI and Title IX. "The primary consideration of the Nevada Legislature in enacting legislation to authorize charter schools is to serve the best interests of all pupils, including pupils who may be at risk."[20] The SPSCA is specifically empowered to revoke a school's charter "[i]f the goals of the school set forth in the charter are not reached," and it assures families that it will take "swift action" to ensure the legal compliance of schools under its authority:

> We provide our charter schools with the autonomy to innovate in the best interests of students while **holding them accountable for academic results, financial performance, and legal compliance**, [We] conduct ongoing oversight and engagement with SPCSA-sponsored schools and their boards to clarify performance and compliance expectations, provide transparency about successes and failures, and take swift action when either performance or compliance fall short.[21]

SPSCA's newly renewed charter contract with DPAC explicitly includes both anti-discrimination commitments duties to correct for both parties. Under rubric "Intervention," the contract states, "[p]ursuant to NRS 388A.150, the Authority shall have broad oversight authority over the Charter School and may take all reasonable steps necessary to confirm that

---

[20] https://charterschools.nv.gov/About/Overview/
[21] https://charterschools.nv.gov/uploadedFiles/CharterSchoolsnvgov/content/Families/Strategic%20Plan%202019_FINAL_ADA.pdf

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

the Charter School is and remains in material compliance with this Charter Contract, the Charter Application, and applicable law and regulation."[22]

DPAC's graded confessional labeling exercises, which Plaintiffs moved to enjoin, compel speech and invidiously discriminate on the basis of racial, gender, and sexual identity, and yet SPSCA acquiesces to the practice. The SPSCA's knowing toleration of curricular programming that is coercive, invasive, discriminatory, and indeed unlawful, is a proximate cause of William Clark's failing grade, and demonstrates a deliberate indifference to the students whose "best interests" SPSCA is constituted by law to protect.

That SPSCA has been derelict in ensuring a safe environment for pupils is apparent in William Clark's case. The Department of Education defines a "racially hostile environment" as one in which racial harassment is "severe, pervasive or persistent so as to interfere with or limit the ability of an individual to participate in or benefit from the services, activities or privileges provided by the recipient." The declarations of Bentheim and Tishkowitz specifically described instances where Defendants personal racial prejudices are magnified into school policy and introduced into curriculum.[23] Complaints of bullying and harassment were ignored, and racially hostile environment of the school is aggravated by understaffing and diminished student oversight that is a consequence of broader financial and administrative mismanagement.[24]

That SPCSA is by disposition loathe to actively monitor and "intervene" at all despite its express mandate to do so is demonstrated by these past incidents. *Davison v. Santa Barbara*

---

[22] ECF No. 1, Ex. B, "Contract," at p. 22, sec. 7.1.1.

[23] ECF No. 20, Bentheim Dec, ¶ 4,16-18; ECF No. 23 Tishkowitz Dec ¶ 10.

[24] ECF No. 23, Tishkowitz Dec, ¶ 6-7;

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

*High Sch. Dist*, 48 F. Supp. 2d 1225, 1230 (C.D. Cal. 1998) ("an official or a supervisor of students such as a principal, vice-principal or teacher cannot put her head in the sand once she has been alerted to a severe and pervasive hostile educational environment.)" SPSCA renewed its charter with Democracy Prep Defendants in June of 2020 after SPSCA's current Executive Director received an exhaustive Whistleblower Letter from a DPAC principal in 2019.[25] The Letter, among other things, alleged fraud and the inflation of attendance and enrollment numbers to secure public funding, financial misappropriation,[26] pervasive privacy violations, and an understaffed, unsafe environment. A student suicide occurred on campus while a state-mandated safety protocol was not in place, police were discouraged from responding to investigations because of ideological theories about policing personally held by certain DPAC administrators, and immunizations went untracked. SPSCA's current Executive Director did not act upon the Whistleblower Letter revelations,[27] and renewed DPAC's charter a year later in June 2020. Presuming the renewal involved thorough due diligence, SPSCA knew, or should have known, about the racially discriminatory "capstone" class at the center of DPAC's curriculum programming well before the Clarks began making their written complaints in September of 2020.

**B.    WILLIAM CLARK IS LIKELY TO PREVAIL ON THE MERITS**

William has shown that that SPSCA knew and acquiesced to a learning environment fraught with racial, gender, and sexual hostility.[28] Such an environment interferes with

---

[25] ECF No. 20, Bentheim Dec., Ex. 1.

[26] *Id.* at ¶ 10, Ex. 1

[27] *Id.* at ¶ 9, Ex. 1

[28] ECF. No. 1, at 35-40; ECF No. 54, Supp Dec of William Clark

Page 8 of 13

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

William's ability to participate in and benefit from his public education. Democracy Prep Defendants, in full view and knowledge of SPSCA, apply pejorative moral labels to individual students on the basis of sex, gender, and race, and oversee a coercive program in which certain students are compelled "unlearn" their heritage and confess their "failings" in graded assignments. These practices are ongoing, and SPSCA is knowingly tolerating a hostile environment regardless of whether it or any one SPSCA official directly created the problem. *Davison v. Santa Barbara High Sch. Dist., 48 F. Supp. 2d 1225* (allegations that the school district knowingly permitted a hostile environment were actionable under Title VI regardless of whether intentional discrimination is alleged.)

SPCSA condones Democracy Prep Defendants' specific practice of endorsing racial, sex, and gender stereotypes as exhibited class material and of conducting mandatory identity labeling exercises which violate Title VI of the Civil Rights and Title IX. No Eleventh Amendment immunity exists for Title VI violation. U.S.C.A. Const.Amend. 11; Civil Rights Act of 1964, § 1003(a)(1), 42 U.S.C.A. § 2000d–7(a)(1). It was foreseeable that a student such as William Clark would conscientiously object to the above-mentioned identity confession exercises. SPCSA, which is legally required to monitor and ensure that the schools it sponsors are compliant with anti-discrimination and harassment law, had the ability to intervene to prevent such practices at DPAC, but negligently chose not to so.

"Whether a hostile educational environment exists is a question of fact, determined with reference to the totality of the circumstances, including the victim's race and age." *T.V. v. Sacramento City Unified Sch. Dist.*, 15-cv-00889, 2016 WL 397604, at *5 (Feb. 2, 2016 E.D. Cal.) (quoting *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998)); see also *Hartman v. Pena*, 914 F. Supp. 225 (N.D. Ill. 1995) (genuine issue of whether environment of mandatory three-day sexual harassment training was objectively hostile (Title

VII)).

Here, the record clearly shows that William has been deprived of the educational services to which he is entitled by the racially charged atmosphere of the class, which in its first session boiled over with such racial recrimination that class had to be halted.[29] The severity and pervasiveness of the hostility is heightened by the fact that here the racial hostility is coming, in large part, from the teacher. Even greater is the apparent moral authority of a teacher (supported by the principal and the entire institutional structure (*see* Benthem Dec. ¶¶ 16-19; Tishkowitz Dec. ¶ 10  Compl ¶ 25) over a high school student, who is less mature and less psychologically secure than a 20-something college student. What's more, DPAC's endorsement of the messaging carries the full weight of government speech. *See Nampa Classical Academy v. Goesling*, 447 Fed. Appx. 776, 778, 275 (9th Cir. 2011) ("Because Idaho charter schools are governmental entities, the curriculum presented in such a school is not the speech of teachers, parents, or students, but that of the Idaho government.").

Yet Ms. Bass—despite knowing that William was the only student in her class who presented as white—used mocking slides featuring cartoon characters to insist that "reverse racism doesn't exist" and that "people of color CANNOT be racist." Compl. ¶¶ 38-39:

 Compl Ex A. p. 9

---

[29] ECF No. 1 at ¶ 41.

 Compl Ex A. p. 9



Compl. Ex. A, p. 9.

William, the only pupil regarded as white student in her class, could not help but see such mockery as an invitation to others to attack, and was required to affirm the derogatory labels with regard to himself in graded assignments.[30] This and the subsequent retaliatory campaign to withhold accommodation and fail William Clark, SPSCA admits and tolerates.

C.  **SPSCA IS NOT PREJUDICED BY ALLEGED PROCEDURAL DEFECTS**

Plaintiffs counsel spoke with SPSCA on January 8, 2020 regarding the Complaint filed December 22, 2020. Plaintiffs' met and conferred at length with SPSCA General Counsel on

---

[30] ECF. No. 1 at 31-32

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

January 21, 2021 regarding the Complaint and Motion for Preliminary Relief and service thereof. A subsequent email and phone call to General Counsel followed that same week but went unreturned. SPSCA had actual notice of the Complaint and Motion and are not prejudiced by any alleged defects in service, nor does SPSCA have good cause for the untimely filing of its opposition.

### III. CONCLUSION

SPCSA's actions and omissions created a foreseeably racially and sexually hostile environment. Plaintiffs seek an order that SPSCA comply with its mandate, and request a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from hosting and sponsoring the coercive, graded identity confession and labeling exercises and a declaration that such exercises, together with official endorsement of race and sex stereotypes in this context, are harassment, a hostile environment and unconstitutional as violating the First Amendment to the Constitution of the United States, 42 U.S.C. §§ 1983, the Equal Protection Clause, Title VI of the Civil Rights Act and Title IX.

For these reasons, as well as the reasons stated above, Plaintiffs motion for injunctive and declaratory relief should be granted.

MARQUIS AURBACH COFFING

By   /s/ Brian R. Hardy, Esq.
    Brian R. Hardy, Esq.
    Nevada Bar No. 10068
    10001 Park Run Drive
    Las Vegas, Nevada 89145

    Jonathan O'Brien, NYB No. 5043369
    (Pro Hac Vice)
    Law Office of Jonathan O'Brien
    43 W. 43rd St, Suite 002
    New York, NY 10036
    *Attorneys for Plaintiffs William Clark and Gabrielle Clark*

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **REPLY TO DEFENDANT STATE OF NEVADA EX REL. STATE PUBLIC CHARTER SCHOOL AUTHORITY'S OPPOSITION [ECF 40] TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF 19]** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 16th day of February, 2021.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

GREENBERG TRAURIG, LLP
MARK E. FERRARIO, ESQ.
KARA B. HENDRICKS, ESQ.
10845 Griffith Peak Drive, Ste. 600
Las Vegas, NV 89135
ferrariom@gtlaw.com
hendricksk@gtlaw.com
*Attorneys for Defendants Democracy Prep Public Schools, Democracy Prep Pubic Schools, Inc., Democracy Prep at The Agassi Campus, Democracy Prep Nevada LLC, School Board of Democracy Prep at the Agassi Campus, Natasha Trivers, Adam Johnson, Kathryn Bass, Joseph Morgan, PhD, And Kimberly Wall*

OFFICE OF THE ATTORNEY GENERAL
AARON D. FORD
GREGORY D. OTT
100 N. Carson St.
Carson City, NV 89701
gott@ag.nv.gov

RYAN W. HERRICK
State Public Charter School Authority
1749 N. Stewart St. Ste 40
Carson City, NV 89706
rherrick@spcsa.nv.gov
*Attorneys for the State of Nevada ex rel. the State Public Charter School Authority*

                                        */s/ Michelle Monkarsh*
                                   an employee of Marquis Aurbach Coffing

MAC:16325-001 4277061_1 2/16/2021 2:15 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816