MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
hendricksk@gtlaw.com

*Attorneys for Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, Democracy Prep Agassi Campus, Natasha Trivers, Kimberly Wall, Adam Johnson, Kathryn Bass, and Joseph Morgan*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GABRIELLE CLARK; and WILLIAM CLARK,

Plaintiffs,

vs.

DEMOCRACY PREP PUBLIC SCHOOLS, Inc.; and DEMOCRACY PREP NEVADA LLC; and DEMOCRACY PREP AGASSI CAMPUS; and NATASHA TRIVERS, in her capacity as CEO of Democracy Prep Public Schools, Inc.; and KIMBERLY WALL, in her capacity as assistant superintendent of Democracy Prep Public Schools, Inc.; and ADAM JOHNSON, in his capacity as executive director of Democracy Prep Agassi Campus; and KATHRYN BASS, in her capacity as a teacher at Democracy Prep Agassi Campus; and JOSEPH MORGAN, in his capacity as president of Democracy Prep Agassi Campus; and REBECCA FEINEN, in her capacity as the Executive Director of the State Public Charter School Authority; and MELISSA MACKEDON (chair), RANDY KIRNER (vice chair), SHELIA MOULTON, SAMI RANDOLPH, MALLORY CYR, TONIA HOLMES-SUTTON, DON SOIFER, TAMIKA SHAUNTEE ROSALES, LEE FARRIS, in their capacities as members of the State Public Charter School Authority,

Defendants.

CASE NO.: 2:20-cv-02324-APG-VCF

**DEMOCRACY PREP DEFENDANTS' MOTION TO DISMISS**

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, Democracy Prep Agassi Campus ("Entity Defendants"), Natasha Trivers, Kimberly Wall, Adam Johnson, Kathryn Bass, and Joseph Morgan ("Individual Defendants", collectively with Entity Defendants "Democracy Prep Defendants" or "Defendants") by and through their attorneys of record, the law firms of GREENBERG TRAURIG, LLP, and WILMER CUTLER PICKERING HALE AND DORR LLP, hereby move, pursuant to Fed. R. Civ. P. 12(b)(6), to: (1) dismiss Gabrielle Clark for lack of standing; (2) dismiss all claims against Entity Defendants and Individual Defendants; and (3) dismiss all of Plaintiffs' causes of action with prejudice. The grounds supporting this Motion are set forth in the accompanying memorandum of law.

WHEREFORE, Defendants respectfully request that the Court dismiss with prejudice the claims and parties listed above.

DATED this 3rd day of June, 2021.

**GREENBERG TRAURIG, LLP**

*/s/ Kara B. Hendricks*
MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, Democracy Prep Agassi Campus, Natasha Trivers, Kimberly Wall, Adam Johnson, Kathryn Bass, and Joseph Morgan*

# TABLE OF CONTENTS


**Page**

INTRODUCTION ... 1
BACKGROUND ... 4
A. Factual Background ... 4
B. This Lawsuit And Clark's Amended Complaint ... 6
ARGUMENT ... 6
I. Gabrielle Clark Should Be Dismissed From This Action ... 7
A. Gabrielle Clark Lacks Standing To Sue ... 7
B. Gabrielle Clark's Parental Rights Claim Should Be Dismissed (Count XI) ... 8
C. Gabrielle Clark's Pupil Protection Claim Should Be Dismissed (Count VIII) ... 9
II. Clark's Constitutional Claims Should Be Dismissed ... 10
A. Establishment Clause (Count III) ... 10
B. Intentional Discrimination And Retaliation (Count IV) ... 12
C. Due Process-Based Privacy Claim (Count V) ... 13
D. Qualified Immunity Bars Clark's Damages Claims Against The Individual Defendants (Counts I–V, XI) ... 15
E. *Monell* Bars Constitutional Claims Against Entity Defendants (Counts I–V, XI) ... 18
F. The Injunctive and Declaratory Relief Claims Should Be Dismissed (Counts I-VIII, XI) ... 20
**1.** Clark's Injunctive And Declaratory Relief Claims Are Moot ... 21
**2.** Clark Lacks Standing For His Injunctive And Declaratory Relief Claims ... 22
III. Clark's Statutory Claims Should Be Dismissed ... 23
A. Title VI And Title IX (Counts VI, VII) ... 23
**1.** Hostile Educational Environment ... 23
**2.** Retaliation ... 25
**3.** Title VI and Title IX Claims Must Be Dismissed As Against The Individual Defendants ... 26
B. The "Statutory Student Expression" Claim Should Be Dismissed (Count XII) ... 26
IV. Clark's Breach of Contract Claims Should Be Dismissed (Count IX and X) ... 27
CONCLUSION ... 29


GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ali v. Intel Corp.*,
797 F. App'x 325 (9th Cir. 2020) .... 26

*Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*,
277 F.3d 1114 (9th Cir. 2002) .... 11

*Ashby v. Isle of Wight Cnty. Sch. Bd.*,
354 F. Supp. 2d 616 (E.D. Va. 2004) .... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 7

*Axson-Flynn v. Johnson*,
356 F.3d 1277 (10th Cir. 2004) .... 13

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .... 6

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) .... 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 6

*Brown v. Li*,
308 F.3d 939 (9th Cir. 2002) .... 12, 16

*Brown v. Woodland Jt. Unified Sch. Dist.*,
27 F.3d 1373 (9th Cir. 1994) .... 12

*C.F. v. Capistrano Unified Sch. Dist.*,
656 F. Supp. 2d 1190 (C.D. Cal. 2009) .... 16

*C.N. v. Ridgewood Bd. of Educ.*,
430 F.3d 159 (3d Cir. 2005) .... 9, 10, 16

*Cal. Parents for Equalization of Educ. Materials v. Noonan*,
600 F. Supp. 2d 1088 (E.D. Cal. 2009) .... 11

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*,
267 F. Supp. 3d 1218 (N.D. Cal. 2017) .... 12, 17

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*,
973 F.3d 1010 (9th Cir. 2020) .... 9



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 370 F. Supp. 3d 1057 (N.D. Cal. 2019)....................11

*City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600 (2015)....................15

*City of Escondido v. Emmons*, 139 S. Ct. 500 (2019)....................16

*United States v. Cogwell*, 486 F.2d 823 (7th Cir. 1973)....................13

*Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir. 2000)....................21

*Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764 (9th Cir. 2014)....................17

*Dillon v. Twin Peaks Charter Acad.*, 406 F. App'x 253 (10th Cir. 2010)....................19

*Doe v. Clark Cnty. Sch. Dist.*, 2018 WL 1368264 (D. Nev. Mar. 15, 2018)....................19

*Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789 (9th Cir. 1999)....................21

*Emeldi v. Univ. of Oregon*, 698 F.3d 715 (9th Cir. 2012)....................25

*Falvo v. Owasso Indep. Sch. Dist. No. I-011*, 233 F.3d 1203 (10th Cir. 2000)....................14

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011)....................15, 20

*Fieger v. Mich. Sup. Ct.*, 553 F.3d 955 (6th Cir. 2009)....................23

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197 (9th Cir. 2005)....................8, 13, 15

*Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187 (9th Cir. 2006)....................9

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009)....................26

*Frudden v. Pilling*, 877 F.3d 821 (9th Cir. 2017)....................16

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Gibson v. Cnty. of Washoe*,
290 F.3d 1175 (9th Cir. 2002)........20

*Green v. San Diego Unified Sch. Dist.*,
226 F. App'x 677 (9th Cir. 2007)........20

*Gonzales v. City of Peoria*,
722 F.2d 468 (9th Cir. 1983)........21

*Harper ex rel. Harper v. Poway Unified Sch. Dist.*,
318 F. App'x 540 (9th Cir. 2009)........20

*Hewitt v. Helms*,
482 U.S. 755 (1987)........22

*Hill v. Blount Cnty. Bd. of Educ.*,
203 F. Supp. 3d 871 (E.D. Tenn. 2016)........19

*Hollenback v. Barr*,
2020 WL 7123050 (D. Nev. Dec. 3, 2020)........7

*Hooks v. Clark Cnty. Sch. Dist.*,
228 F.3d 1036 (9th Cir. 2000)........8

*Hunt v. Cnty. of Orange*,
672 F.3d 606 (9th Cir. 2012)........15

*Jones v. S. Univ.*,
834 F. App'x 919 (5th Cir. 2020)........25

*Kowalski v. Tesmer*,
543 U.S. 125 (2004)........7

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999)........24

*LaVine v. Blaine Sch. Dist.*,
257 F.3d 981 (9th Cir. 2001)........17

*Lee v. Bd. of Trs. of Cal. State Univ.*,
2015 WL 4272752 (C.D. Cal. July 14, 2015)........24

*Lemon v. Kurtzman*,
403 U.S. 602 (1971)........10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)........10

*Lindner v. Occidental Coll.*,
2020 WL 7350212 (C.D. Cal. Dec. 11, 2020)........7

*Lowry v. Sherwood Charter Sch.*,
691 F. App'x 310 (9th Cir. 2017)....28

*T.L. ex rel. Lowry v. Sherwood Charter Sch.*,
2014 WL 897123 (D. Or. Mar. 6, 2014)....28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....22

*Lytle v. Carl*,
382 F.3d 978 (9th Cir. 2004)....18

*Major v. Off. of Superintendent of Sch.*,
2008 WL 5119153 (W.D. Wash. Dec. 4, 2008)....7

*Marin v. Eidgahy*,
2012 WL 928250 (S.D. Cal. Mar. 19, 2012)....12

*Martin v. Williams*,
2020 WL 7365308 (D. Nev. Dec. 14, 2020)....6

*McCarthy v. Underhill*,
2006 WL 383520 (D. Nev. Feb. 17, 2006)....15, 26

*Meritage Homes of Nev., Inc. v. FNBN-Rescon I, LLC*,
86 F. Supp. 3d 1130 (D. Nev. 2015)....28

*Meyer v. Nebraska*,
262 U.S. 390 (1923)....8

*Monell v. Department of Social Services of New York*,
436 U.S. 658 (1978)....18, 19, 20

*Monteiro v. Tempe Union High Sch. Dist.*,
158 F.3d 1022 (9th Cir. 1998)....12, 13, 17, 24

*Morse v. Frederick*,
551 U.S. 393 (2007)....17

*Nkwuo v. Angel*,
693 F. App'x 696 (9th Cir. 2017)....24

*Parents for Priv. v. Barr*,
949 F.3d 1210 (9th Cir. 2020)....14, 15

*Pierce v. Soc'y of Sisters*,
268 U.S. 510 (1925)....8

*Planned Parenthood of S. Ariz. v. Lawall*,
307 F.3d 783 (9th Cir. 2002)....14

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*,
130 F.3d 432 (9th Cir. 1997) .......... 18

*Porter v. Bowen*,
496 F.3d 1009 (9th Cir. 2007) .......... 16

*Preskar v. United States*,
248 F.R.D. 576 (E.D. Cal. 2008) .......... 9

*Prince v. Massachusetts*,
321 U.S. 158 (1944) .......... 8

*Rigsby v. Cnty. of L.A.*,
2011 WL 13143544 (C.D. Cal. Aug. 2, 2011) .......... 14

*G.R. ex rel. Russell v. Dallas Sch. Dist. No. 2*,
2010 WL 5232958 (D. Or. Dec. 15, 2010) .......... 14

*S.J. v. Persps. Charter Sch.*,
685 F. Supp. 2d 847 (N.D. Ill. 2010) .......... 18

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
479 F. Supp. 3d 808 (D. Ariz. 2020) .......... 12

*Saini v. Int'l Game Tech.*,
434 F. Supp. 2d 913 (D. Nev. 2006) .......... 27

*Schwake v. Ariz. Bd. of Regents*,
821 F. App'x 768 (9th Cir. 2020) .......... 17

*Scott v. Pasadena Unified Sch. Dist.*,
306 F.3d 646 (9th Cir. 2002) .......... 21

*Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*,
48 F. Supp. 2d 1225 (C.D. Cal. 1998) .......... 24

*San Diego Cnty. Gun Rights Comm. v. Reno*,
98 F.3d 1121 (9th Cir. 1996) .......... 22, 23

*Skinner v. Clark Cnty. Sch. Dist.*,
2013 WL 1501460 (D. Nev. Apr. 10, 2013) .......... 19

*Smith v. N. Star Charter Sch., Inc.*,
593 F. App'x 743 (9th Cir. 2015) .......... 15

*Smith ex rel. Smith v. Seligman Unified Sch. Dist. No. 40 of Yavapai Cnty.*,
664 F. Supp. 2d 1070 (D. Ariz. 2009) .......... 13

*Sollberger v. Wachovia Sec., LLC*,
2010 WL 2674456 (C.D. Cal. June 30, 2010) .......... 20

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)....22

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 109 (1998)....23

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
919 F. Supp. 2d 1112 (D. Nev. 2013)....7, 11

*T.V. v. Sacramento City Unified Sch. Dist.*,
2016 WL 397604 (E.D. Cal. Feb. 2, 2016)....24

*Todd v. Ackley*,
551 F. App'x 906 (9th Cir. 2014)....7

*Troxel v. Granville*,
530 U.S. 57 (2000)....8

*Ma v. Univ. of S. Cal.*,
2019 WL 414502 (W.D. Wash. Feb. 1, 2019)....9

*Van Ort v. Estate of Stanewich*,
92 F.3d 831 (9th Cir. 1996)....20

*Vernon v. City of L.A.*,
27 F.3d 1385 (9th Cir. 1994)....11

*Watschke v. Dep't of the Air Force*,
2017 WL 4038223 (E.D. Cal. Sept. 13, 2017)....24

*Williams v. City Univ. of N.Y.*,
2011 WL 6934755 (E.D.N.Y. Dec. 30, 2011)....26

*Wilson v. Elko Cnty. Sch. Dist.*,
221 F.3d 1350 (9th Cir. May 15, 2000)....19

*Wisconsin v. Yoder*,
406 U.S. 205 (1972)....8

**State Cases**

*Baldonado v. Wynn Las Vegas, LLC*,
194 P.3d 96 (Nev. 2008)....27

*Frudden v. Pilling*,
130 Nev. 1178, 2014 WL 7188788 (Dec. 16, 2014)....27

*Johnson v. Maki & Assocs., Inc.*,
682 N.E.2d 1196 (Ill. App. Ct. 1997)....28

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**Federal Statutes**

20 U.S.C. § 1232h ........ 6, 9

20 U.S.C. § 1681 et seq. ........ 6, 26

42 U.S.C. § 2000d et seq. ........ 6, 26

**State Statutes**

NRS 386.365 ........ 27

NRS 388.070 ........ 27

NRS 388.077 ........ 3, 6, 26, 27

NRS 388A.015 ........ 28

NRS 388A.366(c) ........ 28

NRS 392.415 ........ 27

NRS 392.457 ........ 27

NRS 392.4575 ........ 27

NRS 392.463 ........ 27

NRS 392.4644 ........ 27

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**INTRODUCTION**

Late last year, William Clark and his mother filed an initial complaint alleging that the Democracy Prep Defendants violated Clark's First Amendment rights by asking him to participate in and engage with course material in his senior-year Sociology of Change class. Specifically, Clark criticized an assignment that asked him to name his individual identities on a private form as part of "an independent reflection exercise," which he argued unlawfully compelled his speech. Clark moved for a preliminary injunction, and the parties engaged in extensive discovery—producing thousands of documents, including class videotapes and transcripts of classroom discussions, deposing eight witnesses, and exchanging three expert reports.

The record amassed in discovery conclusively disproves Clark's claim. Clark was not compelled to express any belief. He could have written that he disagreed with the premise of the independent reflection exercise and would have received full credit. As Clark's teacher told the class that day: "If you do not want me to read this list [of your identities], please name that at the very top of your page and I will not look, I'm just going to see that you filled it out. I'm not going to read too much into it, and I will give you participation points." (Tr. of Zoom Class Recording from Aug. 24, 2020, DEMPREP_00003155 at 2-3; *see also* K. Bass Dep. Tr. 57 ("[S]ome scholars might have left certain parts of this assignment blank and that was their right and their cho[ice] and they were not penalized for it. This was, again, just an exercise and a time for them to reflect on the information given to them and how they also see themselves within the society and, again, their own life experiences and what they do or [do] not attach to their own identities")).[1]

Nor was Clark penalized for expressing his opinion. The amended complaint asserts that after Clark objected to class material, "Ms. Bass terminated class discussion immediately with the intent to chill and discourage future objections to Defendants' preferred viewpoint," Compl. ¶ 105, and that Defendants gave him a failing grade in retaliation. But the record shows that Ms. Bass welcomed dissenting viewpoints and only briefly paused a chat room discussion that had become heated. Clark apparently agrees. He wrote in the very next class "I think you stopped [the discussion] at the right

[1] This information is provided for background only; documents are available to the Court upon request. As discussed below, however, this motion to dismiss turns exclusively on the allegations in the complaint, accepted as true for purposes of this motion.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

time … I felt like things were boiling." (Zoom Chat Tr. from Aug. 31, 2020, DEMPREP_00003273; *Id.* (Unnamed student: Stopping the discussion "was probably for the best in the moment in my opinion, there was a lot of tension that was growing and it was better that we had time to cool off."); W. Clark Dep. Tr. 19-20 ("I went into the chat room and said that everybody can be racist … And the students, we were going back and forth with each other, you know, agreeing, disagreeing with one another until at one point Kathryn Bass decided to close the chat room"); *id.* at 44 ("Q. So … the class welcomed debate on topics like these? A. Right …")). The evidence also shows that Clark received a failing grade in Sociology of Change because he stopped attending or doing his classwork—not out of any supposed retaliation.

Ignoring this record, Clark and his mother amended their complaint—doubling down on the demonstrably false claim that Defendants compelled his speech and penalized him for his opinion, and adding new defendants and causes of action. This motion to dismiss does not require the Court to address or resolve any of these issues. For purposes of this motion, Clark's well-pleaded factual allegations are presumed true. And even with that assumption of truth, the amended complaint falls away.

***First***, Gabrielle Clark should be dismissed from the case. She has no standing to bring claims that are derivative of her son, as he is an adult fully capable of representing himself. And she otherwise lacks a legally cognizable claim because there is no constitutional right of a parent to interfere with a public school's curriculum. Nor can she bring a claim under the Protection of Pupil Rights Amendment, which does not confer a private right of action.

***Second***, the constitutional claims against the entity Defendants—Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, Democracy Prep Agassi Campus (the "Entity Defendants")—should be dismissed. Under *Monell*, Clark cannot hold these Defendants liable for the independent actions of a teacher who was not a final policymaker capable of binding them, and there is no plausible allegation that these Defendants evaluated and signed off on the independent reflection exercise at issue in this case.

***Third***, qualified immunity shields the individual Defendants—Trivers, Wall, Morgan, Johnson, and Bass (the "Individual Defendants")—on all constitutional claims seeking damages. Qualified

immunity protects public officials who reasonably believe that their conduct did not violate a clearly established constitutional right. None of Clark's constitutional claims comes close to being clearly established. At best, they are novel extensions of existing law. More accurately, they are foreclosed by well-settled case law. Similarly, claims under Title VI and Title IX against the Individual Defendants fail because those statutes do not apply to people, but only to a "program or activity."

***Fourth***, Clark's claims for injunctive and declaratory relief should be dismissed as moot. Defendants have already provided the injunctive relief Clark sought by excusing him from and expunging his grade for Sociology of Change, and his requested declaratory relief constitutes a non-justiciable adjudication of a past violation of his rights. Moreover, Clark lacks standing to bring claims for injunctive and declaratory relief, as he makes no allegations of the possibility of future harm. Particularly in light of Clark's upcoming graduation in June 2021, no further injunctive or declaratory relief is warranted.

***Finally***, the remaining causes of action fail in their entirety. The Establishment Clause claim fails because Clark cannot show that the primary message of the Sociology of Change curriculum as a whole is disparagement of religion. The substantive due process right to privacy claim also fails because it has virtually no application in the classroom setting. And the Equal Protection claim fails because Ninth Circuit precedent forecloses challenging curriculum content on Equal Protection grounds.

Clark's discrimination claims under Title VI and Title IX also fail. Even with Clark's distortion of the curriculum, the allegations do not show harassment at all, much less "severe, pervasive, or persistent" harassment sufficient to make out a claim for a hostile educational environment, and discrimination laws cannot otherwise be used to challenge curriculum decisions. The other statutory claim brought under Nevada law, NRS 388.077, should be dismissed because the law only requires schools to adopt certain policies, and it does not confer a private right of action. Last, Clark's contract claims must be dismissed because he is a not a party to (nor an intended third party beneficiary of) a relevant contract between the parties.

The motion should be granted.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## BACKGROUND

### A. Factual Background

Democracy Prep Public Schools' ("DPPS") mission is "to educate responsible citizen-scholars for success in the college of their choice and a life of active citizenship." Democracy Prep Public Schools, *About Democracy Prep*, https://democracyprep.org/about/ (last visited May 31, 2021). As an integral part of this mission, DPPS aims to foster "Authentic Civic Engagement" in its students; that is, it seeks to "prepar[e] scholars to be active citizens and leaders in our democracy." *Id.* To put these ideals into practice, Democracy Prep at the Agassi Campus ("DPAC") requires all students to participate in a standardized civics curriculum, which consists of a year-long course titled Sociology of Change. Compl. ¶ 57. This course aims to encourage students to engage with the community, and to learn, reflect, and discuss complex ideas about social theory and social change. Compl. ¶ 54. The course uses a version of the Socratic method to spark discussion, with early slides reminding students that "Every voice is heard and appreciated" and that class is a "Learning environment—we cannot get better if we do not learn and have difficult conversations!" Compl ¶ 57; ECF 46-1 at 15 (Aug. 18, 2020 Class Slides).

William Clark is a 12th-grade student at DPAC. Like all seniors, he enrolled in Sociology of Change, taught by Kathryn Bass, in August 2020. Compl. ¶¶ 10, 57. The course began with an exploration of how identity can form the basis for social movements; the first lessons were accordingly about understanding and exploring students' identities and how identities can form the basis for social movements. *See* Compl. ¶ 58. During the first week, students were asked to describe their own individual identities on a private Google Doc as "an independent reflection exercise." Compl. ¶ 58. The instructions emphasized: "This list is private!" and "[n]o one else will see this." Compl. ¶ 69. The teacher, Kathryn Bass, shared her own identities, some of which she labeled as "privilege" and some of which she labeled as "oppressive," to demonstrate the self-reflection that the exercise was designed to inspire. Compl. ¶ 61; ECF 46-2 at 10-11 (Aug. 24, 2020 Class Slides). Students then broke into groups for discussion—during which the course materials made clear "You DO NOT have to share your identities!" and that students should "Only share if you feel comfortable and safe enough to do so." *Id.* at 13. The lesson provided topics to spark conversation and tie the exercise back to the purpose

of the course: "How did this activity make you feel?"; "Did you learn anything about yourself?"; "How can identities connect to social movements?" Compl. ¶ 63; ECF 46-2 at 13 (Aug. 24, 2020 Class Slides). Students were asked to submit their answers,[2] which were graded only for completion, not content. Compl. ¶ 60.

On September 14, 2020, nearly three weeks after the identity class discussion, Clark informed Ms. Bass that he would no longer be attending the class because his mother, who is conservative, had a negative reaction to a discussion about liberal and conservative ideologies. Compl. ¶ 75; ECF 46-3 (Sept. 14 email from Clark to Bass). This prompted DPAC's Executive Director Adam Johnson to arrange a meeting with Clark, his mother, and Ms. Bass, where they discussed the course curriculum and encouraged Clark to reach out if he felt that he was treated unfairly. Compl. ¶ 75. After that discussion, Mr. Johnson informed Clark that he would not be allowed to opt out of the mandatory Sociology of Change course and reiterated his desire to provide Clark with a safe and welcoming environment. Compl. ¶ 78; ECF 1-6 (Sept. 18, 2020 letter from Johnson to Gabrielle Clark). Clark did not return to class, despite continued encouragement and outreach from both Ms. Bass and Mr. Johnson. Mr. Johnson then provided Clark with three options: continue his absence from Sociology of Change; participate minimally and pass the course; or fully participate and earn full credit. Compl. ¶¶ 79-81. The trimester ended without Clark returning to class or completing any coursework. He earned a grade of D- for that trimester of Sociology of Change. Compl. ¶ 85. The Clarks and the school communicated via counsel in November and December, and Democracy Prep offered to give Clark full credit if he committed to attending class and completing the missed assignments. Compl. ¶ 84. They also offered Clark the ability to elect a mentor of his choice to help ensure his success, and reassured him that he was not required to disclose his race, gender, sex, or religious identity. *Id.* Again, Clark refused to participate in the course, choosing to file this lawsuit instead. Compl. ¶¶ 84-85.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

---

[2] Clark incorrectly alleges this assignment was to be submitted by September 21, 2020. Compl. ¶ 60. By September 21, Clark had stopped attending Sociology of Change altogether.

### B. This Lawsuit And Clark's Amended Complaint

Clark and his mother originally filed suit on December 22, 2020, bringing claims under the First, Fifth, and Fourteenth Amendments, Title VI, 42 U.S.C. § 2000d et seq., and Title IX, 20 U.S.C. § 1681 et seq., as well as a common law breach of contract claim. ECF 1. On January 15, 2021, Clark and his mother filed an Emergency Motion for Preliminary Injunction and Application for Temporary Restraining Order ("TRO"). ECF 18, 19. On January 19, 2021, this Court denied Plaintiffs' request to consider the motion on an emergency basis. ECF 27. The Court held a TRO hearing on February 25, 2021, where it scheduled a hearing on the preliminary injunction and denied without prejudice the TRO. ECF 61. In the meantime, the parties engaged in extensive discovery, producing approximately 5,000 pages of documents, deposing eight witnesses, and exchanging three expert reports. Prior to the preliminary injunction hearing, Defendants provided Clark with the preliminary injunctive relief sought, expunging his first and second semester Sociology of Change grades and updating his transcript to reflect the same. ECF 93. They also excused Clark from completing the Sociology of Change course as a graduation requirement. *Id.* The preliminary injunction hearing was then vacated. ECF 99.

Clark and his mother subsequently filed an amended complaint on May 3, 2021, bringing claims under the First, Fifth, and Fourteenth Amendments, Title VI, 42 U.S.C. § 2000d et seq., Title IX, 20 U.S.C. § 1681 et seq., the Protection of Pupil Rights Amendment, 20 U.S.C. § 1232h, Nevada state law, NRS 388.077, as well as a common law breach of contract and third-party beneficiary breach of contract claims. ECF 106.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## ARGUMENT

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserts that the complaint fails to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). For purposes of evaluating a motion to dismiss, "the court takes all allegations of material fact as true," while legal conclusions "must be supported with factual allegations." *Martin v. Williams*, 2020 WL 7365308, at *2 (D. Nev. Dec. 14, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard demands "more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hollenback v. Barr,* 2020 WL 7123050, at *1 (D. Nev. Dec. 3, 2020) (citing *Twombly*, 550 U.S. at 555).[3]

**I. Gabrielle Clark Should Be Dismissed From This Action**

**A. Gabrielle Clark Lacks Standing To Sue**

Gabrielle Clark primarily alleges secondhand injuries stemming from William Clark's experience in school. *See, e.g.*, Compl. ¶ 90. To sue for someone else's injury under the doctrine of third-party standing, there must be a "hindrance" to the third-party's ability to protect his/her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). There is no hindrance to Clark's ability to protect his own interests. He is not a minor and is fully capable of asserting his rights, as proved by his presence as a plaintiff in the suit. Clark's mother thus lacks standing to sue. *See, e.g.*, *Todd v. Ackley*, 551 F. App'x 906, 906 (9th Cir. 2014) ("The district court properly dismissed Todd's claims on behalf of his now-adult son because Todd lacks standing to bring those claims."); *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *5 (C.D. Cal. Dec. 11, 2020) ("Once a student reaches the age of majority, courts have routinely held that parents lack standing to bring claims against their adult children's colleges and universities[.]"); *Major v. Off. of Superintendent of Sch.*, 2008 WL 5119153, at *1 (W.D. Wash. Dec. 4, 2008) ("[T]o the extent that any of the children are adults, [their parent] has no legal standing to pursue claims on their behalf."). In the TRO hearing, this Court expressed "concerns" about Clark's mother's lack of standing "to assert claims of compelled speech and claims under Title VI and Title IX." TRO Hr'g Tr. at 45, Feb. 25, 2021, ECF 62. The amended complaint neither alleviates those concerns nor provides any basis for overcoming her fundamental lack of

---

[3] "[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Stevo Design, Inc. v. SBR Mktg. Ltd.,* 919 F. Supp. 2d 1112, 1120 n.6 (D. Nev. 2013) (quoting *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002)).

cognizable injury. Accordingly, where Clark's mother brings a claim based on derivative injury (i.e., Counts VI, IX, X, XII), those claims should be dismissed for lack of standing.[4]

**B. Gabrielle Clark's Parental Rights Claim Should Be Dismissed (Count XI)**

The amended complaint alleges that the Democracy Prep Defendants "engaged in a concerted campaign to transform William's beliefs and values" and that such actions "damaged Mrs. Clark's rights as a parent to raise her son." Compl. ¶¶ 166-167. This claim fails as a matter of law because the Fourteenth Amendment's Due Process Clause does not include a parental right to control the flow of educational information to one's child at a public school.

There is indeed a parental right to make decisions concerning the care, custody, and control of children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion); *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925). But this right has significant limits. The right does not reside exclusively with parents, nor is it "beyond limitation" by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). School regulations constitute a broad category in which parental rights may be restricted, whether by requiring school attendance or setting educational requirements. *See Wisconsin v. Yoder*, 406 U.S. 205, 239 (1972) (White, J., concurring) (the right "lends no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs"); *Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1042 (9th Cir. 2000) (subjecting the right to reasonable state regulation). The Ninth Circuit stated the matter clearly in *Fields*:

> The constitution does not vest parents with the authority to interfere with a public school's decision as to how it will provide information to its students or what information it will provide, in its classrooms or otherwise. Perhaps the Sixth Circuit said it best when it explained, "While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally 'committed to the control of state and local authorities.'" We endorse and adopt the Sixth Circuit's view … the Meyer–Pierce *right does not extend beyond the threshold of the school door.*

[4] Counts I-V and VII are brought only on behalf of William Clark.



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206-07 (9th Cir. 2005) (quoting *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-96 (6th Cir. 2005)) (emphasis added). The court later amended the opinion to be even blunter: "parents do not have a fundamental due process right generally to direct how a public school teaches their child." *Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187, 1190 (9th Cir. 2006) (cleaned up and quotes removed).

This is exactly what Gabrielle Clark's claim attempts to do. The Ninth Circuit has repeatedly foreclosed parental challenges to curriculum content based on substantive due process rights: "once parents select a school, they 'accept that school's curriculum, school policies, and reasonable disciplinary measures.' Our law has recognized no exceptions." *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1020 (9th Cir. 2020) (quoting *McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 711 (9th Cir. 2019)) (denying a religious-based parental objection to the treatment of Hinduism within school curriculum). Nor does the sensitivity of a topic enlarge the right, because students remain "free to discuss these matters and to place them in the family's moral or religious context, or to supplement the information with more appropriate materials." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 185 (3d Cir. 2005). Even specific challenges to "diversity education," similar to the way the complaint describes Democracy Prep's, have been denied under the same principle: parents may not "dictate the curriculum [of] public schools." *Preskar v. United States*, 248 F.R.D. 576, 587 (E.D. Cal. 2008), *adopted by* 2008 WL 802925 (E.D. Cal. Mar. 24, 2008). Gabrielle Clark's claim falls neatly within this prohibition and should be dismissed with prejudice.

**C. Gabrielle Clark's Pupil Protection Claim Should Be Dismissed (Count VIII)**

Gabrielle Clark also brings an independent claim that her "rights as a parent" (Compl. ¶ 151) were harmed by the Democracy Prep Defendants' supposed failure to comply with the Protection of Pupil Rights Amendment ("PPRA"), 20 U.S.C. § 1232h. This claim fails as a matter of law because PPRA does not provide a private right of action to enforce the statute. *See Ashby v. Isle of Wight Cnty. Sch. Bd.*, 354 F. Supp. 2d 616, 623 n.9 (E.D. Va. 2004) (PPRA and FERPA "do not create private causes of action"); *see also Ma v. Univ. of S. Cal.*, 2019 WL 414502, at *4 (W.D. Wash. Feb. 1, 2019) (dismissing analogous FERPA claim with prejudice because it "neither provides a private cause of

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

action nor can it support a Section 1983 claim"); *C.N.*, 430 F.3d at 171 n.13 (explaining that the parties had dismissed their PPRA claim in light of the Supreme Court's decision in *Gonzaga University v. Doe,* 536 U.S. 273 (2002), which held the analogous FERPA law was not enforceable). Thus, to the extent Clark's mother alleges a violation of PPRA, her claim must fail as a matter of law. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014) (explaining that a plaintiff must have a right of action to enforce federal law).

**II. Clark's Constitutional Claims Should Be Dismissed**

Clark raises a bevy of constitutional claims under the First and Fourteenth Amendments. Certain of the claims should be dismissed in their entirety because the amended complaint fails to plausibly allege a constitutional violation. This includes Clark's claim for violation of the Establishment Clause (Count III), intentional discrimination and retaliation (Count IV), and violation of his constitutional right to privacy (Count V).[5] The Court has already indicated (at the TRO hearing) that certain other claims appear to be plausibly alleged. This includes Clark's First Amendment speech claims (Counts I and II). Rather than dispute that point here, the Democracy Prep Defendants intend to defeat the claims on summary judgment should the Court deny this motion to dismiss. But the request for damages associated with those claims—as well as the other constitutional claims—should be dismissed as against the Individual Defendants under qualified immunity. Similarly, all constitutional claims against the Entity Defendants should be dismissed under *Monell* because the complained-of conduct is not a policy or custom of the Entity Defendants. Finally, all constitutional claims for injunctive or declaratory relief, including Counts I and II, should be dismissed for lack of justiciability.

**A. Establishment Clause (Count III)**

Clark alleges that the Sociology of Course curriculum "communicates a message of disapproval … against the Judeo-Christian precepts." Compl. ¶ 114. His Establishment Clause claim fails as a matter of law. Establishment Clause claims are analyzed under the three-part test articulated in *Lemon*

[5] As discussed above (at 8-9) regarding Clark's mother, the constitutional right to parental control claim also fails.



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*v. Kurtzman*, 403 U.S. 602, 612-13 (1971). "Under the second prong of the *Lemon* test, [the Court] must consider whether the government action has the *principal or primary effect of advancing or inhibiting religion*." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1122 (9th Cir. 2002) (emphasis added). When making this determination, courts decide whether it would be "objectively reasonable for the government action to be construed as sending primarily a message of either endorsement or disapproval of religion." *Vernon v. City of L.A.*, 27 F.3d 1385, 1398 (9th Cir. 1994). Because no objective observer would conclude that the primary message of the Sociology of Change curriculum was to disapprove of religion, the claim should be dismissed with prejudice.

A reasonable, objective observer would conclude that the Sociology of Change's *primary* purpose was to teach about civics, social change, and sociological movements—*not* the inhibition of religion. Clark misleadingly strings together quotations from a handful of slides to assert that Ms. Bass "labeled Christianity as an example of an oppressive ideology." Compl. ¶ 66; *see also* Compl. at 30 ("telling students that belonging to the Christian faith is the mark of an oppressor that must be unlearned violates the Establishment Clause."). The curriculum does nothing of the sort. The slide Clark quotes says that society has "dominant" and "submissive group[s]," notes that "Protestant / Christian" is a "[d]ominant group[] in American culture." ECF 1-2 at 33 (Classroom Materials). Yet several slides later, the slides instruct students to "Love & embrace YOU," "Use your voice & have conversations," and "Continue to unlearn & educate yourself," in context of a discussion about social movements and rooting out prejudice. *Id.* at 47. The curriculum cannot be said to inhibit religion. *Stevo Design, Inc. v. SBR Mktg., Inc.*, 919 F. Supp. 2d at 1120 n.6 ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations.").

But even if the curriculum did disparage or inhibit religion, the claim would still fail. That is because Clark cannot demonstrate that "the *primary* message of the [curriculum] is disparagement," *Cal. Parents for Equalization for Educ. Materials v. Torlakson*, 370 F. Supp. 3d 1057, 1079 (N.D. Cal. 2019) (emphasis in original), *aff'd*, 973 F.3d 1010 (9th Cir. 2020), where the quoted material represents just a handful of slides in the "year-long Sociology of Change class." Compl. ¶ 57. Courts "must consider the textbooks and the curriculum *as a whole* to determine whether the primary effect is to endorse or inhibit religion." *Cal. Parents for Equalization of Educ. Materials v. Noonan*, 600 F. Supp.

2d 1088, 1118 (E.D. Cal. 2009) (emphasis added). For that reason, courts dismiss complaints, like this one, where the assertedly hostile aspect of the curriculum represents a small fraction of the overall material and the course's purpose. *See, e.g.*, *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 479 F. Supp. 3d 808, 817 (D. Ariz. 2020) (dismissing complaint because "the teaching's primary purpose was not the inhibition of [Islam]" where "one-sixth of the course and taught in the context of explaining terrorism"); *see also Brown v. Woodland Jt. Unified Sch. Dist.*, 27 F.3d 1373, 1379 (9th Cir. 1994) ("People may take offense at all manner of religious as well as nonreligious messages. If an Establishment Clause violation arose each time a student believed that a school practice either advanced or disapproved of a religion, school curricula would be reduced to the lowest common denominator, permitting each student to become a 'curriculum review committee' unto himself or herself.") (cleaned up and quotes removed).

**B. Intentional Discrimination And Retaliation (Count IV)**

Clark alleges that the Democracy Prep Defendants "intentionally treated him differently because of his skin color, his faith, and his beliefs," in violation of the Equal Protection Clause. Compl. ¶ 119. But in support of that charge, Clark points to the *content* of a select few class slides and assignments in Sociology of Change. Compl. ¶ 120. Such content-based Equal Protection claims are foreclosed by Ninth Circuit law: discrimination claims are "not a means for challenging curriculum content decisions in public schools." *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d 1218, 1232 (N.D. Cal. 2017) (granting motion to dismiss Equal Protection claim as foreclosed by Ninth Circuit law), *aff'd*, 973 F.3d 1010 (9th Cir. 2020), *cert. denied*, No. 20-1137, 2021 WL 1602735 (U.S. Apr. 26, 2021); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1028 (9th Cir. 1998) (courts may not intervene via Equal Protection or Title VI to ban materials from school curriculum "even when the works are accused of being racist in whole or in part"). Rather, "the curriculum of a public educational institution is … a policy with which others do not have a constitutional right to interfere." *Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002). Schools therefore may "require that a student comply with the terms of an academic assignment" and need not "change the assignment to suit the student's opinion." *Id.* at 949; *Marin v. Eidgahy*, 2012 WL 928250, at *9 (S.D. Cal. Mar. 19, 2012) ("[W]hen a teacher makes an assignment … the student has no constitutional

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

right to do something other than that assignment ….") (quoting *Brown*, 308 F.3d at 949). Any other rule would "effectively give each student veto power over curricular requirements." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1292 (10th Cir. 2004).

Nowhere in his complaint does Clark allege other students were exempted from the course, the assignment, or the discussion because of their perceived race, religion, or sexual identity. He does not—and cannot plausibly—allege animus on the part of any of the Democracy Prep Defendants in the execution of the Sociology of Change curriculum. Instead, he has alleged no more than a disagreement with the content presented in the Sociology of Change course. But "putting [ideas] on trial in our courts" is not "the proper way to determine the appropriateness of their use in the classroom"; "[s]uch judgments are ordinarily best left to school boards and educational officials charged with educating young people and determining which education materials are appropriate for which students, and under what circumstances." *Monteiro*, 158 F.3d at 1031-32. Clark cannot plausibly allege discrimination under settled Ninth Circuit law by pointing to class materials that were presented to all students, regardless of race, beliefs, gender, and sex.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**C. Due Process-Based Privacy Claim (Count V)**

Clark alleges that the Democracy Prep Defendants violated his substantive due process right to privacy because neither the classroom exercises nor the "written, graded assignments requesting identity divulgence" were "in fact private or limited to [the teacher] or classroom participants." Compl. ¶¶ 126-127. While informational privacy does include "the right to control the disclosure of sensitive information," *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005), that right has limited if any application in the classroom context. That is because "[e]ducational classes are inherently group activities open to the full view of fellow participants, instructors, and administrative and supervisory personnel." *United States v. Cogwell*, 486 F.2d 823, 835 (7th Cir. 1973). For that reason, there is no recognized right to complete informational privacy in the context of classroom assignments. To the contrary, courts have explicitly declined to use the informational right to privacy to intervene into educational decision-making.

For instance, a school's unilateral decision to involve additional employees in sensitive student conversations has been found to not infringe on informational privacy. *See Smith ex rel. Smith v.*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Seligman Unified Sch. Dist. No. 40 of Yavapai Cnty.*, 664 F. Supp. 2d 1070, 1074 (D. Ariz. 2009) (no privacy issue when school principal unilaterally involved the district's operations manager to confront a student about her allegations of unfair treatment). Neither has the disclosure of confidential records for educational purposes. *Rigsby v. Cnty. of L.A.*, 2011 WL 13143544, at *3 (C.D. Cal. Aug. 2, 2011) ("There is no 'right of privacy' for juvenile records expressly guaranteed by the United States Constitution."), *aff'd*, 531 F. App'x 811 (9th Cir. 2013); *G.R. ex rel. Russell v. Dallas Sch. Dist. No. 2*, 2010 WL 5232958, at *4 (D. Or. Dec. 15, 2010) (no privacy issue when school and probation office shared confidential records and the school used them to make decisions about student's educational program). Nor have classroom policies permitting students to grade one another's work and allowing them to call out their own grades in class. *See Falvo v. Owasso Indep. Sch. Dist. No. I-011*, 233 F.3d 1203, 1210 (10th Cir. 2000) (finding that plaintiffs "lack a sufficiently legitimate expectation of privacy in those grades to claim a constitutional right in their protection"), *rev'd on other grounds*, 534 U.S. 426 (2002). Clark's claim thus fails because there is no constitutional informational privacy right in the classroom. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1223 (9th Cir. 2020) (expressing the "reluctance to expand the 'short list' of liberty rights protected by the Due Process Clause."), *cert. denied*, 141 S. Ct. 894 (2020).

Even if there were a legal basis for Clark's claim to informational privacy, his claim fails for other reasons as well. When evaluating informational privacy claims, the Ninth Circuit looks to factors such as "the type of [information] requested, … the potential for harm in any subsequent nonconsensual disclosure, … the adequacy of safeguards to prevent unauthorized disclosure, the degree of need of access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002) (quoting *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999)). But Clark offers no non-conclusory allegations in support of these factors; he does not allege confidentiality of the "type of [information] requested," the "potential for harm" in other teachers accessing that information, or any other factors necessary to make a claim for informational privacy. *See id*. Clark's only allegations are limited to cursory statements that Defendant Johnson "could and would 'tune in' to the classroom sessions" without the knowledge of students like Clark and that the written

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

assignments could be accessed by other, unnamed, Democracy Prep teachers and supervisors. Compl. ¶¶ 126-127. Such limited and conclusory allegations miss the mark.

Clark additionally asserts that the "program of directing and requiring students to reveal, 'unlearn,' and interrogate intimate matters relating to gender, sex, race, color, and religious liberties" violates Clark's "right to privacy in his personal views." Compl. ¶ 128. This privacy-based claim fails as a matter of law because there is no such right to "privacy in [] personal views." *Id.* The Due Process Clause does not "recognize a [] general right to be free from alleged privacy intrusions." *Parents for Priv.*, 949 F.3d at 1224. And the Ninth Circuit has clearly held that there is "no due process or privacy right to override the determinations of public schools as to the information to which [] children will be exposed while enrolled as students." *Fields*, 427 F.3d at 1200.

**D. Qualified Immunity Bars Clark's Damages Claims Against The Individual Defendants (Counts I–V, XI)**

Whatever the Court concludes regarding the merits of Plaintiffs' constitutional claims, constitutional damages claims cannot be brought against the Individual Defendants because they are immune from damages under qualified immunity.[6] Qualified immunity shields public officials who "reasonably but mistakenly believed that [their] conduct did not violate a clearly established constitutional right." *Hunt v. Cnty. of Orange*, 672 F.3d 606, 615-16 (9th Cir. 2012).[7] To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 986 (9th Cir. 2011) (citation omitted). The Supreme Court has repeatedly reiterated that courts must not "define clearly established law at a high level of generality." *Id.*; *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613

---

[6] Defendants reserve their merits arguments on Clark's compelled speech and viewpoint discrimination claims (Counts I, II) for purposes of this motion to dismiss. But to the extent Clark seeks damages for those claims against the Individual Defendants, such claims are barred by qualified immunity.

[7] Charter school employees and officials are public officials under qualified immunity. *E.g.*, *Smith v. N. Star Charter Sch., Inc.*, 593 F. App'x 743, 744 (9th Cir. 2015) (charter school board); *McCarthy v. Underhill*, 2006 WL 383520, at *6 (D. Nev. Feb. 17, 2006) (charter school administrators and employees). All the Individual Defendants are involved solely through their roles as employees and officials at Democracy Prep. *See* Compl. ¶¶ 15-21.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

(2015) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

Because none of Clark's constitutional claims comes close to being "clearly established," the Individual Defendants are immune from suit. To start, Clark's characterization of his First Amendment rights as a general "right to free speech" and prohibition against "viewpoint discrimination," and "disapprov[al] of a particular religion" is too generalized. *Compare* Compl. ¶¶ 96, 102, 113, *with C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1205 (C.D. Cal. 2009) (characterizing "the right to be free from a teacher disapproving of religion" as "far too broad" for qualified immunity), *aff'd sub nom. C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011). And Clark points to no controlling case that "squarely governs the specific facts at issue."[8] *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). To the contrary, the case law expressly disfavors Clark's First Amendment claims. For example, as the Ninth Circuit has explained, "educator[s] can, consistent with the First Amendment, require that a student comply with the terms of an academic assignment. … [E]ducators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Brown*, 308 F.3d at 949 (internal quotation marks omitted); *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 186-87 (3d Cir. 2005) (requirement to participate in school activity does not offend the First Amendment because the right to be free from compulsion is "necessarily different in the public school setting," where "the educational process itself may sometimes require a state actor to force a student to speak when the student would rather refrain"). The Ninth Circuit held that courts should abstain from using the First Amendment to countermand the considered judgment of professional educators. *Brown*, 308 F.3d at 949-51. When a court "ha[s] to wrestle with difficult and unsettled questions about the First Amendment," it is a clear sign that the right in question is not "clearly established" for qualified immunity purposes. *Porter v. Bowen*, 496 F.3d 1009, 1026-27 (9th Cir. 2007). More to the point, in *Frudden v. Pilling*, 877 F.3d

[8] At the TRO Hearing, Clark admitted the difficulty in pointing to corresponding precedent: "[i]t's very difficult to find a similarly situated individual to him in this particular case because he is a very unique individual." TRO Hr'g Tr. at 26-27, Feb. 25, 2021, ECF 62.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

821, 832 (9th Cir. 2017), the court held that *Barnette* did not clearly establish a broad range of compelled speech rights within the classroom setting.

Further, while students do not shed their constitutional rights to freedom of speech at the schoolhouse gate, schools and teachers retain substantial discretion to ensure that instruction, curriculum, and classroom discussions remain safe and appropriate. Thus, Clark's allegations of "viewpoint discrimination" amount only to an appropriate exercise of control over the classroom and in no way amount to a clearly established violation of a constitutional right. "In the school context, we have granted educators substantial deference as to what speech is appropriate. The daily administration of public education is committed to school officials." *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 988 (9th Cir. 2001) (quotes removed). A school's discretion is at its apex where, as alleged here, the relevant speech is disruptive. Compl. ¶ 73. As the Ninth Circuit held, "[w]here speech for any reason … materially disrupts classwork or involves substantial disorder … school officials may limit the speech." *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 778 (9th Cir. 2014) (internal quotation marks omitted); *Morse v. Frederick*, 551 U.S. 393, 403 (2007) ("Student expression may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.'").

Nor are Clark's Fourteenth Amendment claims clearly established. As explained *supra* 12-13, the Equal Protection clause is "not a means for challenging curriculum content decisions in public schools." *Torlakson*, 267 F. Supp. 3d at 1232; *see also Monteiro*, 158 F.3d at 1028 (courts may not intervene via Equal Protection to ban materials from school curriculum "even when the works are accused of being racist in whole or in part"). And while Clark asserts a generalized "interest in avoiding disclosure of personal matters," assertions of constitutional privacy rights must clearly establish such a right to informational privacy within the specific context in which it is asserted. Compl. ¶ 125; *Schwake v. Ariz. Bd. of Regents*, 821 F. App'x 768, 771 (9th Cir. 2020) (barring under qualified immunity a privacy claim when a privacy right that had not been established in the context of university disciplinary proceedings). Similarly, the assertion of parental rights comes at the highest level of generality, and Clark points to no precedent that clearly establishes such a right in the classroom discussion context. Compl. ¶¶ 164-167. To the contrary, the case law squarely forecloses such a right. *See supra* 8-9. The

Individual Defendants are thus entitled to qualified immunity on all constitutional claims (i.e. Counts I–V, XI); Compl. ¶¶ 92-130, 164-167.

### E. *Monell* Bars Constitutional Claims Against Entity Defendants (Counts I–V, XI)

All of Clark's constitutional claims[9] against the Entity Defendants—Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, and Democracy Prep Agassi Campus—should be dismissed because they are barred by *Monell v. Department of Social Services of New York*, under which a local government entity may only be held liable where the entity *itself* commits a wrong; it "cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691 (1978); *S.J. v. Persps. Charter Sch.*, 685 F. Supp. 2d 847, 856 (N.D. Ill. 2010) (applying *Monell* to charter school). Thus, a school may be held liable under *Monell* only where it acts "pursuant to an express official policy or a longstanding practice or custom," *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004), and where that policy "'amounts to deliberate indifference' to the plaintiff's constitutional right[s]," *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). The amended complaint does not make that showing.

Clark offers a couple conclusory allegations about the Entity Defendants' policy and custom. He alleges that "Defendants"—without specifying who—"were deliberately indifferent to the consequences of their unlawful actions, actions which are overtly custom and practice for Defendant DPAC and DPPS, who authored and orchestrated curriculum programming at issue which was then approved and enforced in the face of Plaintiffs' objections by Defendants." Compl. ¶ 97; *see also* Compl. ¶ 142 ("After [Clark was] repeatedly directed to divulge his sexual and gender identities, school officials as custom and policy … publicly labeled, repeatedly categorized, and stereotyped William's sexual and gender identities in a deliberately pejorative and offensive manner."). He also alleges that the general Sociology of Change curriculum "amounts to a policy, pattern, or practice on the part of DPPS" and that the use of that curriculum constitutes Democracy Prep policy. Compl. ¶ 43.

---

[9] Count I (Compelled Speech & Retaliation), Count II (Viewpoint Discrimination & Retaliation, Count III (Establishment Clause), Count IV (Equal Protection), Count V (Privacy), and Count XI (Parental Rights). *See* Compl. ¶¶ 92-130, 164-167



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Those conclusory allegations do not suffice. Clark's complaint describes one student's classroom experience, which does not amount to policy or custom under *Monell*. Kathryn Bass's teaching decisions do not reflect a school policy, but merely show "how one [employee] in one [] classroom performed [her] job." *Doe v. Clark Cnty. Sch. Dist.*, 2018 WL 1368264, at *4 (D. Nev. Mar. 15, 2018) (declining to hold a school district liable for an isolated instance of inadequate supervision); *Skinner v. Clark Cnty. Sch. Dist.*, 2013 WL 1501460, at *2 (D. Nev. Apr. 10, 2013) (granting motion to dismiss on *Monell* ground where the complaint alleges an "incident of abuse by a school bus aide and a failure to intervene by the bus driver"). Neither would administrative review of a lesson plan automatically elevate an employee decision to the level of school policy. Clark does not—and cannot—allege any in-depth review of Ms. Bass' teaching decisions by Democracy Prep policymakers, nor any constitutional violations beyond his own brief experience in Sociology of Change. How one teacher and administrator approached curriculum is not a policy, much less a custom "so widespread and longstanding that it has the force of law." *Doe*, 2018 WL 1368264 at *4. In short, Ms. Bass was "not a final policymaker" capable of binding Entity Defendants "and her actions…were not ratified by the board." *Dillon v. Twin Peaks Charter Acad.*, 406 F. App'x 253, 257 (10th Cir. 2010) (holding that a principal's independently made decisions did not render a charter school liable in a § 1983 action).

Even if there were a cognizable policy, Clark fails to offer any allegation that such a policy was the "moving force" behind the alleged constitutional violations. *Wilson v. Elko Cnty. Sch. Dist.*, 221 F.3d 1350, 2000 WL 623136, at *2 (9th Cir. May 15, 2000) (dismissing a § 1983 claim for failure to link the policy to the alleged violation). The complaint simply does not allege causation between a Democracy Prep-entity *policy* and his personal experience in Sociology of Change. Instead, Clark repeats the vague and conclusory statements that the violations were "a direct and proximate consequence of these unlawful acts." Compl. ¶¶ 99-100, 110-111, 115-116, 122-123, 129-130. While he seeks to elide the issue by loosely attributing his in-class experience to unspecified "Defendants" as a whole, *see, e.g.*, *id.* ¶¶ 64-65 ("Defendants' class exercises …" "Defendants singled out …"), that does not satisfy basic pleading rules—much less *Monell*. *See Hill v. Blount Cnty. Bd. of Educ.*, 203 F. Supp. 3d 871, 885 (E.D. Tenn. 2016) (barring § 1983 claim because the plaintiff did not show that "the school board itself is the wrongdoer and that the school board's deliberate indifference was a direct

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

causal link in the constitutional violation"); *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing complaint because it "uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong"). At best, Clark alleges a tenuous "but-for" connection between the decisions of Democracy Prep leadership and Clark's classroom experience—yet "but-for" causation is "not enough to prove a causal connection under *Monell*." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996).[10] Nor has Clark alleged any facts to show that the school "could have prevented the violation with an appropriate policy." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016). Without alleging that a school policy led to a "substantial likelihood" of the constitutional violation Clark experienced, his § 1983 claims fail under *Monell*. *Green v. San Diego Unified Sch. Dist.*, 226 F. App'x 677, 679 (9th Cir. 2007). Thus, Clark's constitutional claims against the Entity Defendants—Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, and Democracy Prep Agassi Campus—should be dismissed as barred by *Monell*.

**F. The Injunctive and Declaratory Relief Claims Should Be Dismissed (Counts I-VIII, XI)**

As discussed above, Clark's constitutional claims all fail: the constitutional claims against the Entity Defendants are barred by *Monell*, and the claims for damages against the Individual Defendants barred by qualified immunity. *See supra* 15-18. As a result, Clark's only remaining constitutional claims are for injunctive relief and declaratory relief against the Individual Defendants.[11] But those fail too because Clark has already obtained the only injunctive relief to which he would arguably be entitled if he succeeded on the merits of his claims, and because his imminent graduation renders his

---

[10] Clark refers alternately to SPCSA's authorization of DPAC's charter, but that has no connection to DPAC policy. *See, e.g.*, Compl. ¶¶ 55-56, 99-100

[11] Clark's claim for nominal damages is barred by qualified immunity. *See, e.g.*, *C.F. ex rel. Farnan*, 654 F.3d at 986 (qualified immunity protects against the potential for attorney's fees and costs that stem from an award of nominal damages); *Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 318 F. App'x 540, 542 (9th Cir. 2009) (affirming the dismissal of claims for nominal damages due to qualified immunity).

claims for prospective relief nonjusticiable. Whether viewed through the lens of mootness or standing, Clark's claims for injunctive and declaratory relief should be dismissed.

**1. Clark's Injunctive And Declaratory Relief Claims Are Moot**

Clark seeks two forms of injunctive relief against Defendants. First, Clark requests an injunction prohibiting Defendants from violating the declaratory relief he requests—which amounts to a universal prohibition on teaching the Sociology of Change curriculum. Compl. at 30-31. But Clark has already been provided with individual injunctive relief: Defendants expunged his Sociology of Change grade and excused him from the course. ECF 93. And Clark is also set to graduate in June, mooting any claim for injunctive relief.[12] *See Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) ("A student's graduation moots claims for declaratory and injunctive relief[.]"); *see also Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) ("It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy."). Since this is not a class action, Clark has no standing to seek injunctive relief on behalf of *other* students. *See Gonzales v. City of Peoria*, 722 F.2d 468, 481 (9th Cir. 1983) (holding that non-class action plaintiffs "must demonstrate individually a real threat of future violations of their constitutional rights" to have standing), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

Second, Clark also requests an injunction prospectively prohibiting Democracy Prep from "failing to follow through" with the relief it already provided him, i.e. "the commitments it has made in ECF 39" by expunging his grade and excusing him from Sociology of Change. Compl. at 31. This request is not ripe. Democracy Prep Defendants have already provided the relief contemplated by ECF 39, and there is no allegation they would undo those actions. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("We will not consider a claim to be ripe for judicial resolution if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.… Particularly where constitutional issues are concerned, problems such as the inadequacy of the record will make a case unfit for adjudication on the merits.") (cleaned up and quotes removed). And again,

[12] Clark will graduate in June, not in May as indicated by ECF 93.



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

because Clark is set to graduate in June, any concerns about "follow[ing] through" will soon be moot. Compl. at 31.

Clark's claims for declaratory relief are likewise moot. Clark seeks a declaration that would label his personal experience in Sociology of Change as broadly violative of various federal rights and statutes. *See* Compl. at 30-31 ("Prayer for Relief"). However, because he has been excused from ever being required to take Sociology of Change, and because he is on the cusp of graduation, Clark's request for declaratory relief amounts to no more than a determination by the Court that his rights were violated in the past. Such a request is not justiciable by this Court. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("[A] declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction"). Upon graduation, Clark will no longer have any relationship to DPAC, the Entity Defendants, or the Individual Defendants. Thus, there is no basis to conclude that any declaration will "affect[] the behavior of the defendant towards the plaintiff"—the key distinction between an improper advisory opinion and an appropriate declaratory judgment. *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**2. Clark Lacks Standing For His Injunctive And Declaratory Relief Claims**

To establish Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Should the Court not dismiss the injunctive and declaratory relief claims for mootness, Clark would still lack standing to bring such claims because Clark cannot show that it is "likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). Clark seeks declaratory and injunctive relief and therefore must show "a very significant possibility of future harm; it is insufficient for [him] to demonstrate only a past injury." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted). Because Clark only alleges past injury, and makes no allegations of the possibility of future harm, he lacks standing for his injunction and declaratory relief claims.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*First*, as noted above, there is no allegation in the amended complaint that Defendants are in any way considering undermining their commitments—namely, expunging Clark's Sociology of Change grade and permitting him to graduate without fulfillment of that requirement. *See* ECF 93. An injunction would do nothing to remedy Clark's alleged injury.

*Second*, Clark lacks standing to request a permanent injunction prohibiting the Entity Defendants and Individual Defendants from violating the declaratory relief he requests. Clark's allegations that his rights were violated because of his experience in the class is not sufficient to confer standing because he has not alleged any present or future illegal conduct. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) (where injury is based on "[p]ast exposure to illegal conduct," and "not a continuing violation or the likelihood of a future violation, injunctive relief will not redress [a plaintiff's] injury"). The injunctive relief requested by Clark pertains only to his *past* experience in Sociology of Change. Further, because Clark is about to graduate, there is simply no allegation of any "significant possibility of future harm." *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1126.

*Third*, Clark lacks standing to bring his declaratory judgment claims because he alleges only past violations of rights. "In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm." *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 962 (6th Cir. 2009) (citation omitted). Here, again, Clark can only point to his past experience in Sociology of Change. There are simply no allegations in the amended complaint sufficient to show that any of the requested declaratory relief is likely—or even possible—in the future. Clark cannot show that the requested declaratory relief would resolve any future harm.

## III. Clark's Statutory Claims Should Be Dismissed

### A. Title VI And Title IX (Counts VI, VII)

#### 1. Hostile Educational Environment

Clark alleges that the Sociology of Change assignments created a "hostile educational environment," Compl. ¶¶ 133, 141, violating Title VI and Title IX (Counts VI and VII). Clark's allegations do not amount to a hostile environment on the basis of race, sex, or any other protected characteristic. To show a hostile educational environment, Clark must allege harassment based on a

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

protected characteristic that is "severe, pervasive, or persistent," thus depriving him of access to educational benefits. *Nkwuo v. Angel*, 693 F. App'x 696, 697-98 (9th Cir. 2017). The circumstances required to meet this standard are extreme. *See, e.g.*, *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022 (9th Cir. 1998) (Black students forced to attend class in rooms with the n-word graffitied on the walls).[13] The amended complaint cannot meet this high bar. Aside from asserting legal conclusions, the amended complaint does not include factual allegations of harassment, much less extreme harassment. At bottom, Clark's allegations are that a handful of lessons in one class (that he took virtually) engaged with issues of sex, race, and gender in a way that *he disliked*. Compl. ¶ 142; *see also id.* ¶¶ 58, 63. In those lessons, Clark was asked to identify his race, religion, and sex on a private form, independently reflect on his identities, and then to discuss them with his classmates only if he felt comfortable doing so. Compl. ¶¶ 63, 135 ("William ... was subject to unwelcome insults, judgment, harassment, and discrimination by being labeled and judged by Ms. Bass and the Sociology of Change curriculum she delivered[.]"); ECF 46-2 at 9, 13 (Aug. 24, 2020 Class Slides). That is it—he alleges nothing more. That is not harassment at all, let alone harassment so severe and pervasive that it creates a discriminatorily hostile education environment.[14]

Even if his attendance during classes somehow was enough to constitute harassment, Clark also cannot show, as he must, that the school acted "with deliberate indifference" to the harassment such that its response was "clearly unreasonable in light of the known circumstances." *Davis ex rel.*

---

[13] Other circumstances of a hostile education environment include: a student being delivered a hand-drawn picture of a lynching by several classmates who then broke into her locker and repeatedly wore confederate flags around her, *Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1226 (C.D. Cal. 1998); school policy segregating students based on race, describing students of color as being in the "ghetto" class, and labelling Hispanic students as ESL students even though they did not speak Spanish, *T.V. v. Sacramento City Unified Sch. Dist.*, 2016 WL 397604, at *5 (E.D. Cal. Feb. 2, 2016); a teacher who failed a Black student in concert with saying that she did not "want watermelon seeds all over the floor," *Lee v. Bd. of Trs. of Cal. State Univ.*, 2015 WL 4272752, at *2 (C.D. Cal. July 14, 2015).

[14] As Clark appears to recognize (Compl. ¶ 139), Title VI is limited to discrimination in federally funded programs on the basis of race and Title IX is limited to sex/gender. The statutes do not cover religion. *E.g.*, *Watschke v. Dep't of the Air Force*, 2017 WL 4038223, at *2 (E.D. Cal. Sept. 13, 2017) ("Title VI does not provide protection against 'discrimination on the basis of religion.'"). Thus, claims alleging religious discrimination must be dismissed as a matter of law.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 630, 633 (1999). On the contrary, as detailed above, Democracy Prep's response to all of Clark's complaints was conscientious and thorough. After Clark's first email, the school promptly reached out and held a meeting with Clark and his mother; it considered his request to skip the course and provided a detailed and careful reason for denying it; and it offered several options for Clark to receive credit for the course, including completing assignments after the fact and completing the course with a trusted faculty mentor. *See supra* 5. Thus, contrary to Clark's conclusory allegation of deliberate indifference, Compl. ¶¶ 97, 140, the allegations do not suggest that Defendants acted with deliberate indifference or in a clearly unreasonable manner. Rather, the quoted exhibits, incorporated by reference into the amended complaint, demonstrate the work of careful educators who care about students.

**2. Retaliation**

Clark repackages his statutory discrimination claims as retaliation claims by making conclusory allegations that the Democracy Prep Defendants engaged in "overt retaliation," Compl. ¶¶ 137, 145, and by claiming that his failing grade was the result of Defendants' discrimination against him based on protected attributes, Compl. ¶ 134. But these retaliation claims fail because Clark does not allege that he engaged in protected activity—that is, complaints about race or sex discrimination. To state a claim for retaliation, Clark must show that he engaged in a protected activity, that he suffered an adverse action, and there was a causal link between the two. *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012) (describing retaliation under Title IX); *Jones v. S. Univ.*, 834 F. App'x 919, 923 (5th Cir. 2020) (describing retaliation under Title VI). Clark fails to show that he engaged in a protected activity. Clark's initial email to Ms. Bass did not mention his alleged concerns with discrimination on the basis of race and sex. Rather, Clark pointed only to his mother's conservative political beliefs as the reason he would no longer be attending the class. ECF 46-3 (Sept. 14, 2020 email from Clark to Bass) ("I know I should be in your class right now, but I have left due to reasons regarding the lesson in which you labeled liberals, conservatives, etc. I provided my mother insight on what your class was like since she was curious about it. She is in fact conservative and has been for her entire life. She is very upset with what she saw [.]"); Compl. ¶¶ 73-75 (refencing this course of communication).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

This claim also fails because Clark did not plausibly experience a material adverse action stemming from the allegedly protected activity—his complaint about the course—but instead only an action stemming from his refusal to attend class and complete assignments. Compl. ¶ 79 ("William will not be attending Sociology of Change"); ECF 46-3 (Sept. 14, 2020 email from Clark to Bass) ("[M]e and my mother have come to the agreement that I will not be attending your class until further notice"). *See Williams v. City Univ. of N.Y.*, 2011 WL 6934755, at *5 (E.D.N.Y. Dec. 30, 2011) (race-neutral explanation for a grade did not give rise to a plausible inference of an underlying racial motivation for the grading decision), *aff'd*, 590 F. App'x 84 (2d Cir. 2015); *see also Ali v. Intel Corp.*, 797 F. App'x 325, 326 (9th Cir. 2020) (dismissing race discrimination claims under Title VII where plaintiff failed to allege facts sufficient to state a plausible claim).

**3. Title VI and Title IX Claims Must Be Dismissed As Against The Individual Defendants**

The statutory discrimination and retaliation claims should be dismissed in their entirety for the reasons just discussed. Even if the Court disagrees, however, the claims must be dismissed as against the Individual Defendants.

Title VI and Title IX bar discrimination in any "program or activity" receiving federal funding. 42 U.S.C. § 2000d; 20 U.S.C. § 1681. Individuals are not "programs or activities." Thus, the statutes do not apply to individuals. *See McCarthy v. Underhill*, 2006 WL 383520, at *2 (D. Nev. Feb. 17, 2006) ("[I]ndividual defendants cannot be sued under Title VI."); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247 (2009) ("[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"). Indeed, at the TRO hearing, this Court expressed "concern[] that the individual defendants are not recipients of federal funds so they may not be subject to liability under Title VI and Title IX." TRO Hr'g Tr. at 45, Feb. 25, 2021, ECF 62. Clark has provided no basis for overcoming those concerns, and the Title VI and IX claims against the Individual Defendants should be dismissed with prejudice.

**B. The "Statutory Student Expression" Claim Should Be Dismissed (Count XII)**

Clark includes a claim under NRS 388.077(1), (4), alleging that Defendants "cut[] off classroom discussion" and lacked certain policies in violation of the statute. Compl. ¶¶ 169-173. But the claim

fails as a matter of law because NRS 388.077 does not confer any rights to students or parents. Although NRS 388.077 begins with aspirational language that "[e]ach pupil of a public school ... is entitled to express himself or herself," it only functions to require *school boards* to adopt certain policies and procedures. NRS 388.077(3) ("The board of trustees of each school district … shall adopt a written policy for pupil publications … "); NRS 388.077(4) ("The board of trustees of each school district … shall adopt a policy prescribing procedures for the resolution of a complaint … that the rights of the pupil described in subsection 1 or 3 have been violated.").

Nor does NRS 388.077 create a private right of action. The law contains no express private right of action, and it bears none of the hallmarks of a privately enforceable statute. "[T]he absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 101 (Nev. 2008). In *Frudden v. Pilling*, the Nevada Supreme Court found that certain Nevada education statutes—specifically NRS 386.365, 388.070, 392.415, 392.457, 392.4575, 392.463, and 392.4644—do not "afford [plaintiffs] an implied private right of action." 130 Nev. 1178, 2014 WL 7188788, at *1 n.2 (Dec. 16, 2014). Like the statutes in *Frudden*, NRS 388.077 regulates boards of trustees. *Compare* NRS 388.077(4) ("The board of trustees of each school district … shall adopt a policy prescribing procedures..."), *with* NRS 386.365(1) ("each board of trustees … shall give 13 days' notice of its intention to adopt, repeal or amend a policy"); NRS 388.070 ("When feasible, boards of trustees must maintain all the schools established by them for an equal length of time [.]"); NRS 392.457(1) ("The State Board shall, in consultation with the boards of trustees of school districts, … adopt a policy[.]"). Thus, no private right of action is created under NRS 388.077, and Count XII should be dismissed with prejudice.

**IV. Clark's Breach of Contract Claims Should Be Dismissed (Count IX and X)**

Clark also claims that the Democracy Prep Defendants breached a contract by violating the Scholar & Family Handbook ("Handbook"). Compl. ¶¶ 153-156. Under Nevada law, a breach of contract action must show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). Clark's claim fails because he has not alleged the first element: that the Handbook constitutes



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

a contract with individual students. Democracy Prep is a public charter school, and "a contractual relationship is not found in the relationship between a public school and its students given the involuntary nature of attendance and the absence of consideration." *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 2014 WL 897123, at *13 (D. Or. Mar. 6, 2014), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017). Further, the existence of student handbooks, brochures, district board policies, catalogs, and bulletins are collectively not "sufficient to establish the existence of a contract between [a defendant charter school] and [student plaintiff]." *Lowry*, 691 F. App'x at 311.

Clark cannot establish the existence of a contract between himself and Democracy Prep. Democracy Prep is a public charter school and, like all of Democracy Prep's students, Clark does not pay tuition to the school. *See* NRS 388A.366(c) ("A charter school shall … [r]efrain from charging tuition or fees[.]"). Without the payment of tuition in exchange for the regular curriculum of the school, there is no consideration and no contract between Clark and Democracy Prep.[15] Though the absence of consideration in the form of tuition defeats the claim, Clark's allegations of breach of contract also fail because documents like handbooks are insufficient to establish the existence of a contract. *See Lowry*, 691 F. App'x at 311. Because there is no contractual relationship between a public high school and its students, or their parents, Clark's breach of contract claim fails.

With respect to Clark's claim for third-party beneficiary breach of contract (Count X), a charter contract is executed between "the governing body of a charter school and the sponsor of the charter school." NRS 388A.015. Democracy Prep's charter is accordingly executed between the State Public Charter School Authority and Democracy Prep at the Agassi Campus. *See* ECF 1-3 (Charter School Contract). As a non-party to the contract, Clark has no right to enforce its terms unless he is an *intended* third-party beneficiary. *See Meritage Homes of Nev., Inc. v. FNBN-Rescon I, LLC,* 86 F. Supp. 3d 1130, 1139 (D. Nev. 2015) ("Under Nevada law, a breach of contract claim may only be raised by the

[15] Clark's argument that students and parents who "elect to enroll" at Democracy Prep "direct taxpayer dollars to DPAC, in exchange for educational services" fares no better. Compl. ¶ 153. The payment of taxes such as legally obligated property taxes provides "no consideration [for a contract] because there has been no detriment." *Johnson v. Maki & Assocs., Inc.,* 682 N.E.2d 1196, 1199 (Ill. App. Ct. 1997).



GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

recipient of the promise, and third-party beneficiaries are only entitled to seek remuneration if it can be clearly discerned that the contracting parties intended to benefit the third party when the agreement was formed—incidental beneficiaries lack the right to claim relief."), *aff'd*, 690 F. App'x 507 (9th Cir. 2017). If Clark is merely an "incidental" beneficiary of the Charter School Contract, that does not grant Clark the ability to seek remuneration under the contract. *Id*.

Here, there is no question that Clark is *not* an intended third-party beneficiary of the contract. By its own terms, the contract expressly disclaims such a theory: "[t]his Charter Contract shall not create any rights in any third parties who have not entered into this Charter Contract; nor shall any third party be entitled to enforce any rights or obligations that may be possessed by either party to this Charter Contract." ECF 1-3, Section 12.11 Third Parties (Charter School Contract). Because neither Clark nor Mrs. Clark are third-party beneficiaries of the Charter School Contract, Plaintiffs claim for third-party beneficiary breach of contract fails and Count X should be dismissed with prejudice.[16]

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**CONCLUSION**

For these reasons, the amended complaint should be dismissed with prejudice as follows:

1. Because Clark's mother does not have standing to bring derivative claims and otherwise lacks a cognizable claim, she should be dismissed from the action.

2. Clark's constitutional claims for damages (Counts I-V, XI) against Individual Defendants should be dismissed as barred by qualified immunity.

3. Clark's constitutional claims against Entity Defendants (Counts I-V, XI) should be dismissed as barred by *Monell*, since Clark has not and cannot allege that the independent reflection assignment and classroom decisions by Ms. Bass constituted a policy or custom of Entity Defendants.

4. Clark's claims for injunctive and declaratory relief (Counts I-VII, XI) should be

[16] Clark also claims that "Defendants"—without specifying which—breached their contracts. Compl. ¶ 156. To the extent Clark claims any of the Individual Defendants are in violation of a contract, such claim should be dismissed because the Clark only alleges the existence of contracts with DPAC and SPCSA as institutions. *See id*. ¶ 153 ("The DPAC 'Scholar & Family Handbook … constitutes a contract between DPAC and its students and families"), ¶ 158 ("The charter between SPCSA and DPAC is a legally enforceable contract"). Without any contract (or allegation of a contract) between Clark and any of the Individual Defendants, they should be dismissed from those claims.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

dismissed as both moot and lacking standing, since Defendants have already provided Clark with his requested belief and he makes no allegations of the possibility of future harm.

5. All counts should be dismissed as a matter of law.

DATED this 3rd of June, 2021.

**GREENBERG TRAURIG, LLP**

*/s/ Kara B. Hendricks*

MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Democracy Prep Public Schools, Inc., Democracy Prep Nevada LLC, Democracy Prep Agassi Campus, Natasha Trivers, Kimberly Wall, Adam Johnson, Kathryn Bass, and Joseph Morgan*